## NELSON FULLER v. VAN RENSELLAER W. BENNETT.

*Sale of note by collecting agent.*

1. Leaving a note at a bank for collection does not authorize the bank to sell it. And if the bank does sell it without authority, and satisfies the payee, the purchaser cannot afterwards collect it as against a surety of the maker. And if the purchaser has left the payee to suppose that the note was regularly taken up, the latter cannot, after the maker's death and on being made a party to a suit upon the note against the surety, be required to elect between affirming the sale and rescinding it and restoring the money which he has received in payment of it.

2. The maker of a note that has been sold to satisfy the payee will continue liable upon it, if he consents to do so; but his consent will not bind his surety.

3. Whether one who in good faith has purchased a note that has been sold without authority has not a remedy against the vendor—Q.

Error to Livingston. (Newton, J.)  Oct. 23.—Nov. 19.

ASSUMPSIT. Defendant brings error. Reversed.

*B. T. O. Clark* and *L. S. Montague* for appellant. The rule that possession is only prima facie proof of title applies to promissory notes: *Hovey v. Sebring* 24 Mich. 232; *Red-*

*mond v. Stansbury* id. 446; the purchaser of which must find whether the vendor has authority to sell: *Kornemann v. Monaghan* 24 Mich. 36; while a collection agent who holds a note payable to bearer or indorsed in blank, for collection, may bring suit in his own name, still the title in such agent is only a limited one, in trust, for the purpose of collection, and not to sell: *Boyd v. Corbitt* 37 Mich. 53; *Moore v. Hall* 48 Mich. 145; 2 Pars. N. & B. 117, 119.

*Rollin H. Person* for appellee.

COOLEY, C. J. This action is brought upon a promissory note, dated March 14, 1876, payable one year from date to Jacob Held or bearer, and signed by John Duane and the defendant. Duane was principal in giving the note and defendant was his surety, though the fact did not appear on the face of the instrument. The suit was begun November 27, 1882, and Duane had died previous to that date. On the trial the plaintiff put the note in evidence and rested his case. The defendant called the payee of the note as a witness, who testified that the note remained in his possession until after it fell due; and he then left it at McPherson's bank in Howell for collection. His instructions to McPherson were to collect the note if he could; all he wanted out of it was his money,—nothing else. The note was collected by McPherson and the money paid over to witness by McPherson himself, not a great while after it was left. Witness came to town one day and McPherson called him in and told him the note was paid. Neither at the time of leaving the note nor at any time afterwards did the witness authorize McPherson to sell the note or transfer it to any one. Witness first learned in the fall of 1882 that plaintiff claimed to own the note. The judge then asked the witness: "Have you taken any steps to rescind the sale, or pay back the money since you learned that plaintiff claimed to have bought the note?" The answer was in the negative. The defendant also gave evidence as follows: "I had a conversation with the plaintiff about two years after John Duane claimed to have paid the note. Plaintiff said, 'I have got a little paper with your name to it.' I said, 'I guess not.' He said, 'I have.' I said,

'I don't know anything of the kind out against me now.· Then plaintiff said he had a note I signed with John Duane, describing the note in evidence. I said, 'John Duane told me he paid that note and took it up.' Plaintiff said, 'He did, but I let him have the money to do it with.' This conversation must have been close to two years after the note became due." Plaintiff testified on his own behalf that he purchased the note of McPherson, paying for it the full amount; that within a few weeks afterwards he saw defendant and Duane together about it, and they, after a private consultation, told him he need not worry about the note; it was perfectly good and should be paid. He denied that he ever told defendant that he let Duane have the money to pay the note. On cross-examination he said : " When I came to Howell and paid the money into the bank for this note, I came in my buggy and John Duane came with me. When we got here I think we went right to McPherson's bank. I can not say whether Duane went with me into the bank or not; he was right there, though, close by, if he did not go in with me. I think he did not go in with me until I went in and introduced the matter. I did not state to McPherson that I came for the purpose of paying a note he held against Duane and Bennett. I first acquired knowledge that this note was at the McPherson bank for collection against the defendant and Duane, about the time I got the note. I think John Duane told me. He said there was a certain note signed by himself and Bennett—a joint note—in McPherson's bank, and he wanted I should go and buy the note." Further on he said that he did not know the note was in the bank for collection, and that his purpose in going to the bank was not to pay·the note, but to buy it.

No evidence was given that it was any part of the customary business of the bank to sell notes for others. When the evidence was concluded the defendant requested the judge to instruct the jury that if Held, the owner of the note, gave McPherson no authority to sell it, but only authority to collect, and the note was past due when obtained by the plaintiff, then the plaintiff acquired no title to the note, and cannot recover. This was refused, and the jury were told that if

the plaintiff went to the bank and with his own money pur-
chased .the note in suit, without any knowledge or informa-
tion that McPherson had no authority to sell, then the plaintiff
would be entitled to collect the amount from defendant.
The question of fact whether the plaintiff did in fact buy the
note instead of paying it, was submitted to the jury. The ver-
dict was for the plaintiff, and the defendant brings error. The
instruction to the jury can only be supported on the assump-
tion that one who has possession of negotiable paper for the
purposes of collection has authority by implication of law to
sell it. It is not claimed that express authority from Held
to McPherson to make sale of the note was proved, and no
custom of the bank to deal in securities for others was shown.
Unless, therefore, authority to sell is included in authority
to collect, or is to be implied from it, plaintiff never obtained
title to the note. That the one is not included in the other
was held in *Russell v. Drummond* 6 Ind. 216, and we do
not find in the plaintiff's brief in this case any serious con-
tention for a different rule.

The plaintiff contends, however, that, as McPherson
assumed to make a sale, Held, if it was unauthorized, is put
to his election, and must either rescind the sale and return
the money McPherson paid him, or failing to do so, the sale
will stand ratified, and the want of authority to make it
originally will become of no moment. This is upon the
principle that one cannot be allowed to take the benefit of a
transaction and at the same time repudiate it. But the diffi-
culties in the way of accepting this proposition are insurmount-
able. *First.* It appears Held does not admit any sale was made.
He left his note for collection ; was told it was collected ; re-
ceived his money on that understanding, and is ready to abide
by the transaction now as he understands it ; and if in fact no
sale was made, he can be under no obligation, legal or honorary,
to give the transaction the form of a sale because it will suit
the interest of another that he should do so. *Second.* Held
is no party to this litigation, and is concerned in it only as a
witness. This controversy is between plaintiff, as purchaser
of the note, and defendant, as maker ; and plaintiff is entitled

to recover if he can show a purchase ; otherwise, not. If his purchase was ineffectual for want of authority from Held to make it, the court has no power and no means of requiring and compelling Held to elect between affirming the sale and rescinding it. He has received the amount of his note, and he stands indifferent in the present controversy. But *third*, if Held were a party to this suit, he could not now be required to elect between affirming a sale and rescinding it and restoring the money received by him, for the very obvious reason that the circumstances have so changed that it would be grossly inequitable to compel it. It appears by his evidence that he never heard that plaintiff claimed to have purchased the note until after the death of Duane, and more than five years after he had received his money upon it. It cannot be plausibly contended that an election could be forced upon him under such circumstances,—when it would be impossible to restore him to his former position in respect to the note and the makers.

The truth seems to be that plaintiff took the note from the bank for the accommodation of Duane ; and if McPherson had authority only to receive payment, the transaction must, so far as Bennett is concerned, have been ineffectual to transfer a title upon which suit could be brought. If Duane consented to the note being kept alive as to himself, he would remain liable upon it ; but he could not agree to that effect for the defendant. The latter claims that the note is paid ; and Held, who was owner, appears to agree with him. If the plaintiff has been misled into any different understanding, he may possibly have a remedy against McPherson ; but whether he has or not is unimportant in this controversy.

The judgment must be reversed and a new trial ordered.

The other Justices concurred.