SAMUEL D. COYKENDALL, Appellant, *v.* AMOS CONSTABLE et al., Impleaded, etc., Respondents.

The payee of a joint and several note, at the request of the principal maker, the others having executed it for his accommodation, sent it to a bank for collection. Plaintiff, at the request of the principal, and upon the understanding that the note should be transferred to him, delivered to the bank the amount due thereon, and received the note. The money was forwarded by the bank to the payee, who received it without knowing but that it was a payment ; after learning the facts, however, he retained the money. In an action upon the note, *held,* that, although the bank had no authority to sell, yet the retention of the money by the payee, after knowledge, and his omission thereafter to demand the note or assert title thereto, was a ratification of the sale ; and that, at least in the absence of evidence that the sureties had been, by information and a consequent belief that the note was paid, induced to remain quiet, and so had been injured, plaintiff was entitled to recover.

*Gillet* v. *Phillips* (13 N. Y. 114), *Houghton* v. *McAuliffe* (26 How. Pr. 270), *Burr* v. *Smith* (21 Barb. 262), *Fuller* v. *Bennett* (21 N. W. Rep. 433), distinguished.

(Argued April 30, 1885 ; decided June 9, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 22, 1884, which affirmed a judgment in favor of respondents, entered upon the report of a referee.

The action was upon a joint and several promissory note executed by defendants, payable to Carl Peters, or bearer.

The referee found in substance these facts: The note in question was made by defendant, DeGarmo, as principal, and by the other defendants as sureties, and was delivered to Peters, the payee therein named. The payee, Peters, put the same into the hands of his attorney, John Lyon, for collection. DeGarmo, on being pressed for payment, said to Lyon that "if he would send said note to the First National Bank of Rondout, it would be paid or met." Lyon thereupon gave the note to the Home National Bank of Ellenville, to be sent as requested to the First National Bank of Rondout for payment or collection. Lyon, not hearing from the said First National Bank of Rondout relative to said note, called at said bank, and was told by the cashier that "Mr. DeGarmo is going to the Falls to-day to raise that money, and you will hear from him before many days." DeGarmo did not have the money in the First National Bank to meet or pay said note, and called upon the plaintiff to take and hold said note, who agreed to do so. Plaintiff afterward went to said bank, and after inquiring of said cashier "as to the responsibility on such a note," was informed "that if these parties consented to the transfer they would be liable;" he ordered the said cashier to charge the amount of said note to him, which the cashier did, and sent this amount to the Ellenville Bank, which was paid to Peters. Plaintiff so paid the amount of said note with the intention of taking and holding the same as owner, and not with the intention of paying the same, but this fact was not communicated to the Ellenville Bank or to said payee.

As a conclusion of law, the referee found that "the First National Bank of Rondout had no power or authority to sell and transfer said note to the plaintiff, and that the defendants answering are entitled to judgment."

*S. L. Stebbins* for appellant.   There was no payment of the note, because all that was said related to a purchase and not to a payment, and the transaction cannot be turned into a payment in direct opposition to the intention of both of the immediate parties to it.   (*Swope* v. *Leffiingwell*, 72 Mo. 348.)   The transaction would not be considered a payment merely because the person who received the money imagined that he received it in payment.   (*Gernon* v. *McCan*, 23 La. Ann. 84.)   The express contract of the makers of the note was that they would pay to the bearer of it $1,000 with interest; the plaintiff is the bearer of the note, and as such he is entitled to recover upon it.   (*Bullard* v. *Bell*, 1 Mason, 243.)   The *bona fides* of the holder alone is to be considered, not that of his transfer.   (*Uther* v. *Rich*, 10 Ad. & El. 784 ; *Helmer* v. *Krolick*, 36 Mich. 373 ; *Thompson* v. *Perrine*, 16 Otto, 589.)   Except as to letting in defences existing at the time of its transfer, the fact that a note is past due does not affect its negotiability.   (*Leavitt* v. *Putnam*, 3 Comst. 494; *Way* v. *Richardson*, 3 Gray, 412.)   In view of Bray's advice, the plaintiff can hardly be regarded as negligent in advancing the money without inspecting the note; but even gross negligence in that respect would not be equivalent to bad faith, and would not defeat his title to the note. (1 Daniel's Neg. Inst. [3d ed.], §§ 769a [bottom of page 717], 774, 776.)   In all transactions in which a bank may lawfully engage, the cashier is the managing agent and speaks for the corporation.   (*Caldwell* v. *National Mohawk Valley Bk.*, 64 Barb. 333.)   Under the facts of the case, as it does not appear that the transfer worked any injury to any of the parties to the note, and as a defeat of the transfer would operate as a confiscation of the plaintiff's funds for the benefit of the payee and makers, the knowledge of Bray or his bank, the agent, should be held to be the knowledge of Peters, his ultimate principal, and such imputation of knowledge to him is required by the equity of the case ; and it was incumbent on Bray to communicate the facts to Peters, and the plaintiff had a right to assume that he would do so.   (Wharton's Comm. on Agency and Agents, §§ 177, 178; 1 Wait's Actions and De-

fenses, 231, 232, § 11; *Hovey* v. *Blanchard*, 13 N. H. 145.)
As Peters, at the trial, having knowledge of the transaction,
made no claim to the note, or disavowal of the transfer, and
did not return or offer to return the money called for, his
omission amounted to a ratification of the transfer. (*Eadie* v.
*Ashbaugh*, 44 Iowa, 519; 1 Daniel's Neg. Inst. [3d ed.], §§ 319,
322; *Culver* v. *Ashley*, 19 Pick. 300; *National Bank* v. *Fas-
sett*, 42 Vt. 432.) Such ratification took effect as of the time
of the transfer. (1 Daniel's Neg. Inst. [3d ed.], § 318; *Eadie*
v. *Ashbaugh*, 44 Iowa, 519, 520.) If the note was not sold
and transferred to plaintiff, it still belonged to Peters, who had
not parted with his title to it, but in such case, even without
notice that the transaction between cashier Bray and the plaintiff
was intended as a sale and transfer, Peters could not replevy
the note from the plaintiff without first tendering or returning
the money advanced by him. (*Bennett* v. *Judson*, 21 N. Y.
238; *Elwell* v. *Chamberlain*, 31 id. 611.) Until repayment
by Peters, the transfer was and is valid against him, and, as
against the defendants, the plaintiff was and is the legal holder
and owner of the note, and the facts shown to defeat his title
constituted no defense. (*Way* v. *Richardson*, 3 Gay, 412;
*Whiteford* v. *Burckmyer*, 1 Gill [Md.], 127; *Pacific Bk.* v.
*Mitchell*, 9 Metc. 297; *Aubrey* v. *Fiske*, 36 How. Pr. 279;
36 N. Y. 47; *Brown* v. *Penfield*, id. 473; *Sheridan* v.
*Mayor*, 68 id. 30; *City Bank* v. *Perkins*, 29 id. 554; *Hayes*
v. *Hathorn*, 74 id. 486; *Gernon* v. *McCan*, 23 La. Ann. 84.)

*John Lyon* for respondents. The First National Bank of
Rondout had no authority to sell or transfer the note. (*Far-
rington* v. *Park Bk.*, 39 Barb. 645.) The plaintiff got no title
to the note by paying it to the bank under the circumstances.
(*Burr* v. *Smith*, 21 Barb. 262; *Gillett* v. *Phillips*, 3 Kern.
114; *Houghton* v. *McAuliffe*, 26 How. Pr. 270.) The note
was by such payment paid and satisfied. (*Burr* v. *Smith*, 21
Barb. 262; *Hartshorn* v. *Brace*, 25 id. 126, 128.) The note
by such payment as to the respondents was discharged, and
became *functus officio*. (*Hartshorn* v. *Brace*, 25 Barb. 126,

128.) The objection to the question put to the plaintiff, " did you intend to pay that note ? " was well taken. It called for 'the operation of the mind of the witness, and not for facts. (*Newell* v. *Doty*, 33 N. Y. 89–94.)

FINCH, J. If the note upon which this action is founded was not paid, its makers were liable unless those of them who were sureties became freed from their obligation by reason of some act which changed their contract or imperiled their rights. The referee does not find such payment as a fact, nor as an inference from the facts ascertained. Indeed, it is difficult to see how any such inference could have been possible from the proof. Whatever may be true as to the want of authority to sell the note, in the bank which received it for collection, it is quite certain that the transaction between the plaintiff and the collecting agent was a sale, or an entirely void proceeding. It could not be transformed into a payment in hostility to the expressed intentions of both parties who acted in the transfer. There was a sale, or an attempt at a sale which utterly failed, but never a payment ; and an erroneous supposition by Peters, the payee, as to the fact which produced the money, traceable to his ignorance of the truth, cannot alter the nature of that truth. The note then, being unpaid, is due from the makers to some one, and must be payable to Peters or the plaintiff. The only concern of the defendants, if the rights of the sureties have not been infringed, is to know to which of two parties they may safely pay the debt. If they had paid it voluntarily to plaintiff, could Peters, after full knowledge of the situation and with the plaintiff's money in his pocket and persistently retained, successfully sue upon it as owner ? It is quite certain that he could not. He would be unable to produce the note, and could not force it from plaintiff's possession without return of the purchase-money, and while keeping that would be obliged to admit that he held it as a payment of the note or consideration of its sale, and either alternative would be fatal to his cause of action. The defendants thus can pay the debt which they have not paid to the plaintiff as its holder

with entire safety and without danger of being liable to Peters. Why then should they not pay it? If the transaction had been found to be, or shaped upon competent proof as, an advance by plaintiff to DeGarmo, the maker, of the money necessary to pay the note, the successful defense would have been payment; but, when nothing of the kind was either done, or intended, or found as a fact, and the note remains unpaid, why should not its makers pay it? It is not claimed that the sureties directed or required its collection, or put the owner, whoever he might be, under a duty to enforce it. Their contract was not changed. They promised to pay to Peters or bearer, and the plaintiff is the bearer, and comes to them with that title and in accord with their contract. They agreed that the note might be sold when they made their contract negotiable. No right of theirs was violated and they suffered no injury. If they desired the note promptly sued they could say so as well to plaintiff as to Peters, or pay it and take their remedy against DeGarmo. Their sole defense, therefore, was that which prevailed with the referee; that the bank had no authority to sell, and so plaintiff got no title. Undoubtedly Peters might have repudiated the act of his agent when he learned what it was. The moment he became possessed of that knowledge, he was bound in common honesty to return the money paid him by mistake, or retain it as it was given to his agent. The law will not endure that he shall keep the product of the agent's act and yet repudiate his authority. Even in a case of fraudulent representations by the agent, never at all authorized or suspected by the principal, a reception and retention of the proceeds may make the latter responsible for the fraud. (*National Life Ins. Co.* v. *Minch,* 53 N. Y. 144; *Hathaway* v. *Johnson,* 55 id. 93.) No wrong or violence is done to the rights of Peters by the process. His agent obtained plaintiff's money by a pretended sale of the note in excess of the authority conferred, and Peters knows it. If then he keeps the money and avails himself of the fruits of the unauthorized act, he cannot be allowed to repudiate it. But he does not repudiate it, or attempt to do so. He sets up no claim to the note,

and says only that he wanted the money and did not care how he got it; that is, whether by a sale or a payment. The fact then that the note was not paid, and he knew it, although for a time he thought that it was, followed by his continued retention of the money, his omission to demand the note or assert any title to it, admit of no other interpretation than a ratification of the sale. It is all the more easily inferred because his interest lay in that direction. It made the money in his possession lawfully his, and took him wholly out of the controversy. It is just to the plaintiff who parted with his money as purchaser and upon the faith and credit of the note. It does no injustice to the sureties, for they have no equity to be discharged without payment. Circumstances might have occurred which would have entitled them to a release. Possibly if they had been lulled into a false security by information and a consequent belief that the note was paid, and due to the silence and delay of the purchaser, the principal in the mean time becoming insolvent, some just ground might exist for their discharge. But nothing of the kind is in the case. No such defense is pleaded, and no suggestion made of any injury resulting from the sale. The evidence shows that Terwilliger, one of the sureties, was notified of a proposed transfer, and not only did not object but promised to see his associates. They say only that they never consented to a sale. They do not say that they were not notified of an intended transfer; and since they make no complaint, either in the pleadings or the proof, that they have been misled or harmed by the transaction treated as a sale and ratified as such by Peters, there is no injustice done to them. Certainly they have no equity to compel the plaintiff, in hostility to his intention and against his will, to pay their note for which he was in no manner bound.

We find no difficulty, therefore, in applying to the case the doctrine of ratification. Coykendall made the purchase before he had seen the note or the indorsements upon it. Peters knew the whole truth, at least when examined as a witness on the trial, and instead of repudiating the sale said only that he got the money for his loan, "and that was the end of it."

The cases cited by the respondent are not inconsistent with our view of the transaction.    Some of them were founded upon statutes relating to corporations, and making certain transfers void because illegal.    (*Gillet* v. *Phillips,* 3 Kern. 114; *Houghton* v. *McAuliffe,* 26 How. Pr. 270.)    In one of them the agent of the payee did not sell or intend to sell the note, and nothing was said which necessarily gave him notice of a different intention on the part of the person taking the note. (*Burr* v. *Smith,* 21 Barb. 262.)    Beyond the cases cited, our attention has been incidentally drawn to one which tends, in many respects, to justify the contention of the respondents. (*Fuller* v. *Bennett,* 21 N. W. Rep. 433.)    It is observable, however, that the question of payment arose, and upon a very debatable state of facts ; and also that the payee never knew that his note was not paid until five years after the money was received, and when the situation of the parties had been changed by the intervening death of the maker.    Our great respect for the learned judge who wrote the opinion has caused us to give additional reflection to the views we have expressed, but has not shaken our conviction that in this case the title of the plaintiff to the note sued upon was good.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.