GUERNEY, *Appellant*, v. MOORE, *Appellant*.

Division Two, December 17, 1895.

1. **Corporation**: EXECUTION: RETURN: KANSAS STATUTE. General Statutes of Kansas, paragraph 4567, provides that the sheriff shall return a writ of execution "within" sixty days from its date. Paragraph 1192, *Ibid.*, provides that if execution is issued against a corporation, except a railway, religious, or charitable corporation, and no property on which to make a levy can be found, the creditor may proceed by action to charge the stockholders with the amount of his judgment. *Held*, that a return against such corporation defendant before the expiration of the sixty days' period is not premature where the defendant is insolvent and has ceased to do business.

*Guerney v. Moore.*

2. ——: INSOLVENCY: JUDGMENT: KANSAS STATUTE.  Where the corporate debt left unpaid at the time of the dissolution of the corporation is a judgment, a creditor's suit against stockholders may, under the General Statutes of Kansas, paragraphs 1200 and 1204, be founded on such judgment instead of on the original cause of action.

3. Practice: PARTIES: ASSIGNEE: STATUTE.  Under Revised Statutes, 1889, section 1990, requiring suits to be brought in the name of the real party in interest, an assignee is entitled to sue in his own name, regardless of any collateral arrangement between him and the assignor as to the proceeds.

4. ——: ——: ——.  Such assignment, it seems, is sufficient, although not made in writing.

5. ——: ——: ——: TRUST.  The transfer by the beneficiary of an express trust of his interest in the trust fund does not revoke the trust but the trustee still remains such for the beneficial assignee.

6. Corporation: JUDGMENT: PAYMENT.  Plaintiff, to whom a note against a corporation had been assigned by a bank, recovered judgment thereon, but execution against the defendant was returned *nulla bona.*  S., who was guarantor of the note, deposited the amount due the bank with the express understanding that the deposit was to be regarded as a security and not as payment, and took a certificate of deposit "not subject to check."  The bank agreed to prosecute actions against the corporate stockholders to enforce their individual liability.  *Held,* that the deposit was not a payment and satisfaction of the judgment.

7. ——: STOCKHOLDER: CREDITOR: REMEDIES.  A stockholder may become a creditor of a corporation, and for any debts he may have paid for it in excess of his liability as a stockholder he has all the remedies and rights of any other creditor of the corporation.

8. ——: ——: ——: ——: KANSAS STATUTE.  General Statutes of Kansas, paragraph 1205, providing that if any stockholder of a corporation, other than railway, religious, or charitable corporations, pay more than his share of any of its debts he may compel contribution from the other stockholders by action, does not exclude such stockholder from invoking all the remedies open to other creditors.

9. ——: ——: DOUBLE LIABILITY FOR CORPORATE DEBTS: KANSAS STATUTE.  Under General Statutes of Kansas, paragraphs 1192 and 1206, a corporate stockholder is liable for corporate debts in an amount equal to that of his stock and also to any sum remaining unpaid on his stock.

10. ——: ——: ——: ENFORCEMENT IN MISSOURI. The foregoing statutory provisions are contractual and not penal ones, and will, therefore, be enforced in Missouri, though the statutes of the latter state limit the liability of stockholders in corporations created under its laws to the amount of his stock.

11. ——: ——: ——: ——. Under said statutes of Kansas (paragraphs 1192 and 1206) a subscriber for $5,000 of stock who has paid $2,500 thereon is liable for $7,500, notwithstanding it was agreed on organization to issue stock as fully paid when only fifty cents on the dollar was actually paid.

*Appeal from Jackson Circuit Court.*—Hon. E. L. SCAR-RITT, Judge.

REVERSED AND REMANDED.

*Peak & Ball* for Moore, appellant and respondent.

(1) The sheriff's return was premature and plaintiff acquired no right of action. *Marks v. Hardy*, 86 Mo. 232; *Schermerhorn v. Conner*, 41 Mich. 376; *Adams v. Cumminskey*, 4 Cush. 420; *Roberts v. Knight*, 48 Me. 171; *Dillon v. Rash*, 27 Mo. 243; *Johnson v. Latta*, 84 Mo. 139. (2) The language of the Kansas statute makes the stockholder primarily liable; it does not contemplate a suit against a stockholder founded on a judgment against the corporation. (3) Plaintiff can not maintain this suit. Sheidley paid the bank and took no assignment and it was as if he had paid Guer-ney and this payment revoked and annulled whatever authority Guerney had over the judgment as the representative of the bank. (4) The evidence shows, too, that the judgment had been paid off and discharged by Sheidley. See *McDaniels v. Lee*, 37 Mo. 204; *Burton v. Rutherford*, 49 Mo. 255; *Hull v. Sherwood*, 59 Mo. 172. (5) The Kansas statute under which plaintiff is proceeding is a penal one and the courts of this state will not enforce it. *Critzer v. Woodson*, 19 Mo. 327; *Ochiltree v. Railroad*, 54 Mo. 113; *Bank v. Rudge*, 154 Mass. 203.

*W. L. Stocking* for Guerney, respondent and appellant.

(1) The execution was not prematurely returned. *Renaud v. O'Brien*, 35 N. Y. 99; *Tomlinson v. Mfg. Co.*, 34 Fed. Rep. 380; *Leverett v. Read*, 54 Ala. 531; *Hower v. Krider*, 15 Serg. & Rawle, 43. (2) Under the facts in the case no execution was necessary; the law does not require useless things. *Savings Ass'n v. Kellogg*, 52 Mo. 585; *Flash v. Conn*, 107 U. S. 371; Morawetz on Private Corp., sec. 883. (3) The action was based on the Kansas statute and plaintiff showed compliance with it. *Knight v. Frost*, 14 Mo. App. 331; *Marks v. Hardy*, 12 Mo. App. 595; s. c., 86 Mo. 232. (4) This action was rightly instituted on the judgment. *Grund v. Tucker*, 5 Kan. 70; *Hawes v. Co.*, 101 Mass. 385; *Thayer v. Co.*, 108 Mass. 523; Cook on Stockholders, sec. 209. (5) This suit was brought by the real party in interest. (6) The facts in evidence do not show payment or satisfaction of the judgment before this suit was brought. See *Wheeler's Estate*, 1 Md. Ch. 80; *Coykendall v. Constable*, 99 N. Y. 309; *Swope v. Leffingwell*, 72 Mo. 348. (7) "The law is settled that a surety against whom judgment is rendered with his principal, may advance the money to the creditor and have the judgment assigned to a third person and kept alive for his security." *Chandler v. Higgans*, 109 Ill. 602; *Crawford v. Logan*, 97 Ill. 396; *Glagg v. Geltmacher*, 98 Ill. 293; *Barriger v. Royden*, 7 Jones (N. C.), 187; *Townsend v. Whitney*, 75 N. Y. 42; *Allen v. Tuft*, 11 How. (N. Y.) Pr. 187; *Corey v. White*, 3 Barb. (N. Y.) 12; *Harheck v. Vanderbilt*, 20 N. Y. 393; *Ramsey v. Daniels*, 1 Mackey (D. C.), 16; *Corcoran Granite Co. v. French*, 65 How. Pr. 309. (8) "If a creditor suing a corporation also holds stock in less amount than that held by the person so sued, the

defendant is not on any principle entitled to any greater relief than an abatement of his liability declared by statute of a sum equal to the amount of stock held by plaintiff.'' *Schaefer v. Brewing Co.*, 4 Mo. App. 115; *Hall & Co. v. Klink*, 25 N. C. 348; *Farrows v. Brivings*, 13 Rich. 45; *Simpson v. Spencer*, 15 Wend. 548; *Slee v. Bloom*, 5 Johns. (Ch.) 382.    (9) The Kansas double liability statute is not a penal one.    It creates a contractual relation between the stockholders and creditors of the corporation and this court can no more refuse to recognize it than it can any other contract validly entered into in another jurisdiction.    Morawetz on Private Corporations, secs. 875 and 876, and cases cited; *St. Louis Supply Co. v. Harbine*, 2 Mo. App. 134; *Hodgson v. Cheever*, 8 Mo. App. 318; *Bagley v. Tyler*, 43 Mo. App. 195; *Flash v. Conn*, 107 U. S. 371. (10) The trial court committed error in refusing to enter judgment for plaintiff in the sum of $7,500.

GANTT, P. J.—This cause is here on cross appeals from the circuit court of Jackson county.

There is practically no conflict in the evidence. In the year 1887 the defendant, L. R. Moore, George Sheidley, and others entered into the agreement hereinafter set out.    In October, 1887, a corporation was formed in pursuance of this agreement under the laws of Kansas known as the Kansas City Radiator and Iron Foundry Company.    The chief promoter and organizer of this corporation was Joseph Askins.    This corporation was organized for manufacturing and business purposes; and was not a railway, a religious, or charitable corporation.

At the time of the organization of this corporation the following sections of the Kansas statutes (General Statutes, Kansas, 1889) were, and still are, in full force and effect:

"(1192) *Execution against stockholder: action.* If any execution shall have been issued against the property or effects of a corporation, except a railway, or a religious, or charitable corporation, and there can not be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit, or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

"(1206) *Liability.* No stockholder shall be liable to pay debts of the corporation, beyond the amount due on his stock, and an additional amount equal to the stock owned by him."

"(1200) *How dissolved.* A corporation is dissolved —first, by the expiration of the time limited in its charter, second, by a judgment of dissolution rendered by a court of competent jurisdiction; but any such corporation shall be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year, or that any corporation now so suspended from business shall for three months after the passage of this act fail to resume its usual and ordinary business."

"(1204) *Action against stockholder.* If any corporation, created under this or any general statute of

this state, except railway, or charitable, or religious corporations, be dissolved, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit; and if judgment be rendered, and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of dissolution, for the recovery of the portion of such debt for which they were liable, and the execution upon the judgment shall direct the collection to be made from property of each stockholder, respectively; and if any number of stockholders (defendants in the case) shall not have property enough to satisfy his or their portion of the execution, then the amount of deficiency shall be divided equally among all the remaining stockholders, and collections made accordingly, deducting from the amount a sum in proportion to the amount of stock owned by the plaintiff at the time the company dissolved.

"(1205)  *Contribution.*  If any stockholder pay more than his due proportion of any debt of the corporation, he may compel contribution from the other stockholders by action."

"(4567)  *Execution returnable.*  The sheriff, or other officer, to whom any writ of execution shall be directed, shall return such writ to the court to which the same is returnable, within sixty days from the date thereof."

On March 21, 1890, the directors resolved to close out the business of the corporation, collect all moneys due it, sell out its works, and pay the proceeds to its creditors.   After that date no goods were manufactured or sold, and no business transacted except such as was necessary in closing up its business.   In July, 1890, it effected a sale of its entire plant and placed the purchaser in possession thereof, though the deed was not

delivered and the purchase money paid until January, 1891.  By January, 1891, all of its assets had been converted into cash and paid out to its creditors.  After that time it had no assets of any kind except some uncollectible and worthless accounts.  The last stockholders' meeting was held in November, 1890, and the last directors' meeting in February, 1891.  Since February, 1891, there has been no meeting of either stockholders or directors and no business of any kind transacted.

At the time of the directors' meeting of March 21, 1890, the corporation owed about $51,500, of which $6,500 was secured by mortgage on its real estate and was assumed by the purchaser; $25,000 was a note to the Union National Bank; $15,000 was a note to Henry Harper, and the balance consisted of numerous small debts.

At the meeting on March 21, 1890, it was agreed by the directors, of whom defendant was one, that in closing up the business of the company the small debts should be first paid, to the end that the debts might be reduced in number, in order that if it became necessary to sue the stockholders the debts might be united in one account, thereby saving costs and complications of numerous suits.

This policy was carried out, and all the small debts of the company paid, and $3,000 paid on note of Henry Harper, and after all the assets of the company had been exhausted there still remained unpaid the note of $25,000 to the Union National Bank, and $12,000 on the note of Henry Harper.

These two notes were by the bank and Harper assigned to the plaintiff, David E. Guerney, and suit brought thereon against the corporation at the request of George Sheidley, who was a guarantor of the bank note and surety on the Harper note.  In this action

Vol. 131 mo—42

plaintiff recovered judgment against the corporation on April 11, 1891, for $37,770.77 in the district court of Wyandotte county, Kansas. The court was a court of general jurisdiction and had jurisdiction of the parties and cause. Execution was issued on this judgment April 21, and returned May 12, 1891, and immediately thereafter motions were filed in the district court of Wyandotte county, Kansas, for judgment against the Kansas stockholders.

In October, 1891, Harper insisted upon his money being paid, whereupon Sheidley paid it to him, taking from him a written assignment of his interest in the judgment. This was done through plaintiff Guerney, who gave Harper the check for the money. The Union National Bank also wanted its debt paid. Sheidley refused to pay it, but agreed to make a special deposit to cover the amount, with the express understanding that the bank should continue to prosecute suit against the stockholders and endeavor to collect from them. With this understanding, he did make a special deposit of the amount of the claim, taking therefor a negotiable certificate of deposit, bearing interest, which certificate of deposit was "not subject to check." The certificate is on a printed form, and the words "not subject to check," are printed.

It is admitted that the defendant owned $5,000 of the capital stock of this corporation, at all of the times stated in the petition, and still owns same, and that only $2,500 in cash has been paid thereon; that certificates were issued to him therefor as fully paid and nonassessable, and that these certificates were issued with the knowledge and consent of all the stockholders.

This action was instituted by plaintiff on the third day of January, 1893. The petition is in two counts, the first being predicated on section 1192 of the Kansas statutes, and alleges the recovery of judgment against

the corporation and the issuance and return of execution thereon, and that no property could be found whereon to levy the execution. The second count is based on sections 1200 and 1204 of the Kansas statutes, and proceeds upon the theory of the dissolution of the corporation for the purposes of this action, by reason of the suspension of business for more than one year. The answer sets up: *First*, a general denial; *second*, that the return of the execution against the corporation was premature; *third*, that the judgment against the corporation on which the action was based had been paid and extinguished; *fourth*, that George Sheidley was also a stockholder in the corporation; that he had paid the judgment against it, and that his remedy was for contribution against the stockholders.

The agreement hereinbefore referred to is in these words:

### "ARTICLES OF AGREEMENT.

"The undersigned hereby agree with each other to contribute the sums set opposite our names respectively, and pay twenty-five per cent of the same on demand, to George Sheidley, in consideration whereof it is agreed that Joseph Askins shall assign, transfer, and deliver, or cause to be assigned, transferred, and delivered to George Sheidley, as trustee, the following patents and property, to wit: Three patents for improvements in radiators issued to Joseph Askins numbered respectively 350,336, 365,663, and 367,083, including the territory under said patents, of the whole United States; also the machinery, tools, and patterns now in use by J. H. Reid & Company, in Lima, Ohio, which consists of two combined drills and tapping machines and one upright drill, one ratter, one emery grinder, and other small tools, such as drills, reamers,

taps, hammers, chisels, and wrenches and all pattern flasks and coreboxes, and all else pertaining to the manufacture of radiators.

"After $50,000 has been subscribed hereto so that the amount of cash can be relied upon, and twenty-five per cent of it paid in cash to George Sheidley, it is agreed that any five of the undersigned may thereupon form a corporation under the laws of Missouri or Kansas, as they may elect, with a capital stock of $200,000, in shares of $1,000 each; the object of which shall be to establish iron foundry shops especially adapted to manufacture the Askins radiators; and manufacture, sell, and deal in the same and other goods.

"In consideration of said George Sheidley conveying to said corporation said patents and other property above mentioned and the money hereby subscribed, said corporation shall issue and deliver to said George Sheidley $150,000 of the capital stock of said corporation, fully paid up, and thereupon said George Sheidley shall assign and deliver $50,000 of such paid up stock to Joseph Askins, or his order, and the other $100,000 shall be divided between the undersigned subscribers hereto in proportion to the amount of money subscribed and paid by each.

"Upon these considerations said George Sheidley is directed to make such conveyance to said corporation.

"Upon the formation of this corporation, foundry buildings and shops according to the plans and specifications, to be approved by George Sheidley, shall be built and paid for with the money in George Sheidley's hands as the buildings progress, on grounds near Argentine, Kansas, selected by the Argentine Real Estate Investment and Loan Company, and by it sold or donated to said proposed corporation. Such buildings

shall be the property of the proposed corporation, and the money remaining in said George Sheidley's hands after paying for the same shall go into the treasury of said corporation as its property.

"Everything required to be done herein shall be proceeded with. at once and completed. Twenty-five per cent of the amount subscribed shall be paid to George Sheidley, on demand, and the balance to be paid upon call of the board of directors of said corporation."

This agreement was signed by all subscribers, including plaintiff and defendant.

The case of *Howell v. Manglesdorf*, 33 Kan. 194, and the case of *Walburn v. Chenault*, 43 Kan. 352, were read in evidence. On the trial of the case it was agreed between counsel for. plaintiff and defendant that the above cases need not be set out in · the bill of exceptions, but that the decisions might be referred to by the appellate court.

This case was tried by the court sitting as a jury, and the finding was for the plaintiff, and his damages assessed at $5,000, and judgment rendered for him in that amount. Motions for a new trial were filed in due time by *both* plaintiff and defendant, *both* of which were overruled, and *both* plaintiff and defendant *appealed*.

The only error assigned by plaintiff is that the court erred in not assessing his damages at $7,500, being the face value of the stock held by defendant, and $2,500 unpaid thereon. ·

The defendant assigns five errors:  *First*, that the execution was prematurely returned, and, therefore, no cause of action had accrued on first count; *second*, that the second count should have been on the original cause of action and not on the judgment against the corporation; *third*, that the suit is not prosecuted by

the real party in interest; *fifth*, that the cause of action is based upon a foreign statute, *penal in its nature*, which this court will not enforce.

The assignments of error will be considered in the order in which they are made.

I. Was the execution prematurely returned? The statute of Kansas, under which it was issued, provides "the sheriff or other officer, to whom any writ of execution shall be directed, shall return such writ to the court to which the same is returnable, *within sixty days* from the date thereof." Sec. 4567, art. 20, chap. 80, G. S., Kansas, 1889.

The supreme court of Kansas in *Howell v. Manglesdorf*, 33 Kan. 196, held that the proceeding, under section 1192 (set forth in the statement accompanying this opinion), against a stockholder was contingent upon the insolvency of the corporation or upon the rendition of a judgment against the corporation and the return of an execution thereon of *nulla bona* and that the proceeding was an independent one whatever remedy was employed.

The contention of counsel for appellant Moore is that the action *only* accrues upon the return of the execution unsatisfied, and that as the execution in this case shows upon its face that it was returned in nineteen days after it was issued, such a return is premature and will not support this proceeding. To this plaintiff replies that the return is sufficient, and, *secondly*, that under the undisputed facts in this case the execution was a vain and useless thing and not required by law, and, *thirdly*, that it was sufficient, under the terms of the Kansas statute, that an execution had issued and that the fact was proven that no property could be found.

Upon a statute identical in terms with the Kansas statute, the court of appeals of New York, in

*Renaud v. O'Brien*, 35 N. Y. 99, held that a return by the sheriff before the expiration of the time *within which* he was required to make it, was a sufficient basis for a proceeding like this. Said the court: "The point beyond which it shall [not] continue is provided, but the statute is silent · as to how soon he is to be permitted to make the return. This would seem to leave the point in the discretion or judgment of the sheriff, subject to his liability to all parties who may be injured by his insufficient or improper performance of the duty. It is not his duty to enforce and collect the execution by levying on the property of the defendant, and he is allowed to retain the execution for this purpose until the sixty days are about to expire. In ordinary cases, it would doubtless be his duty to retain it, for the purpose of securing the amount, until near the time limited for its return. If, however, the defendant should be known to the sheriff to be notoriously insolvent, and he should take the hazard of an early return, I see no objection to its legality." This decision has never been criticised or overruled in that state.

In Minnesota the statute provided that executions should be returned *within sixty days*. The federal court for that circuit in *Tomlinson, etc., Mfg. Co v. Shatto*, 34 Fed. Rep. 380, in an opinion by Judge NELSON, held that as the law fixed the time of return at any time *within sixty days*, the plaintiff was not required to wait sixty days to commence supplementary proceedings, but could commence when the return was made though less than sixty days had elapsed.

The supreme court of Alabama in *Levert v. Read*, 54 Ala. 529, defined " within " as signifying " not later than," and as limiting a *time beyond which* an act

should not be done.    To the same effect is *Hower v. Krider*, 15 S. &. R. (Pa.) 43.

The statute affords, first, a reasonable time within which the officer can serve the writ, having due regard to his other duties, but it is also for the benefit of the creditor in that it specifies a limit beyond which the officer shall not neglect to serve the writ or grant forbearance to the debtor.

Opposed to these decisions, counsel for appellant Moore urge the decisions of this court in *Dillon v. Rash*, 27 Mo. 243; *Marks v. Hardy*, 86 Mo. 232, and *Johnson v. Latta*, 84 Mo. 139.

*Dillon v. Rash* and *Johnson v. Latta* arose under Revised Statutes of Missouri of 1855, which required an execution issued by a justice of the peace to be returnable in sixty days, and upon a *nulla bona* return, a transcript might be filed, and lands of the defendant sold under an execution from the circuit court.    It was held that the law gave the defendant the sixty days before his land could be sold; that it was an indulgence to him.    These cases were decided upon the ground that the law fixed *a definite return day*, a day sixty days after its date.

*Marks v. Hardy* arose under section 736, Revised Statutes, 1879, which remained unchanged in the Revision of 1889, sec. 2517.    That section provided that if an execution had been issued against any corporation, and no property could be found whereon to levy the same, then such execution could issue against a stockholder for unpaid balance on his stock, upon motion after notice given.    It was urged against the proceeding against the stockholder in that case, that the return of the execution was premature.    This court held that as there was nothing in the return or indorsement upon the writ to show when it was lodged with the clerk, the presumption was that it was not returned

before the return day, which, by our statute, then Revised Statutes, 1879, section 2338, and now Revised Statutes, 1889, section 4898, is made the next succeding term, unless otherwise directed, when it shall be returned to the second succeeding term. Commenting upon *Livingston v. Cleveland*, 5 How. Pr. 396, and *Renaud v. O'Brien*, the learned judge who wrote the opinion, remarked that those cases were made to turn upon the then existing statute (of New York) which allowed a return at any time within sixty days.

It will be observed that the Kansas statute is identical with the New York statute, and the Kansas statute is before us for construction and not our own, which was under consideration in *Marks v. Hardy*, *supra*, and the reference to the New York decision can hardly be construed as a disapproval thereof. As late as the 103 New York, 502, it was said that statute had been the law of that state since 1840, with the exception of a few months in 1848 and 1849. Previous to 1840, writs were returnable in term time.

We have searched the Kansas reports in vain for a construction of section 4567, General Statutes, Kansas, 1889, by the supreme court of that state as to the effect of a return of an execution prior to the expiration of sixty days.

Giving the language of that section its plain and ordinary signification, and fortified by the decisions in New York, Minnesota, and Alabama and other states, and with no adjudication of the supreme court of Kansas opposed thereto, we do not think the execution was prematurely returned.

Under statutes requiring a return by the officer *within* a certain number of days, when the officer knows that the debtor has nothing, as in this case, and that the corporation is not only insolvent, but has ceased to do business, it appears to us unreasonable to require

him, under the terms of the execution, to retain it in his hands for no other purpose than to prevent the creditors of the corporation from resorting to supplementary means of collecting their debts.

We can not conceive under such circumstances of any good that can result to honest stockholders by such delay, but can readily understand how such a delay would furnish those who were disposed to evade their just obligations as stockholders ample opportunity to conceal their property and to make pretended assignments of their stock. Indeed, upon the uncontroverted facts of this case, we are justified in holding that no execution against the corporation was necessary to charge the stockholders, upon the principle that "the law does not require a vain or impossible thing," a maxim held to be peculiarly applicable in similar cases. *State Sav. Ass'n v. Kellogg*, 52 Mo. 583; *Shickle v. Watts*, 94 Mo., *loc. cit.* 420; *Walker v. Deaver*, 79 Mo. 674; *Flash v. Conn*, 109 U. S. 371; *Morgan v. Lewis*, 17 N. E. Rep. (Ohio) 558.

The evidence is undisputed that the corporation had no assets, and had entirely ceased to do business. This action is based on a Kansas statute. That statute rendered the stockholders liable, not only upon an execution issued and return of *nulla bona*, but upon the failure to find any property whereon to levy the execution, and this is shown beyond all controversy. Accordingly we hold that this action is not premature, and the contingencies had occurred which justified the bringing of the suit.

II. The next proposition advanced by appellant Moore is that this action should have been on the original cause of action, and not on the judgment against the corporation; that by the law of Kansas defendant was a statutory surety primarily liable for the debts of the corporation, and could be proceeded against

without joining the corporation, and that the judgment against the corporation was not even evidence against him, and the defendant, therefore, had the right to be heard upon the original debt.

The general doctrine is that the judgment against the corporation is conclusive against the stockholder as to the validity and amount of the claim, but a few courts have held it only *prima facie*, though none have gone so far as to hold it not even evidence, save perhaps New York, whose decisions on the point greatly conflict. *Thayer v. New England, etc., Co.*, 108 Mass. 523; *Donworth v. Coolbaugh*, 5 Iowa, 300; *Milliken v. Whitehouse*, 49 Me. 527; *Wilson v. Pittsburg, etc., Coal Co.*, 43 Pa. St. 424, 15 Fed. Rep. 361 to 365; Cook, Stock and Stockholders [3 Ed.], sec. 209.

Such a judgment can only be impeached for fraud or want of jurisdiction except in those cases in which by the terms of the statute the stockholder is only liable for particular debts or to a particular class of creditors, and in such cases he may go behind the judgment to ascertain whether it is founded on a debt for which he is liable.

It very is evident that this act did not make the stockholders sureties for each other. *Perry v. Turner*, 55 Mo. 426. And it is equally clear, we think, that their liability is secondary and contingent. Before the stockholder can be made liable the creditor must show either a dissolution of the corporation, leaving its debts unpaid, or that he has recovered judgment against it, issued execution, and no property of the corporation could be found whereof to satisfy it. There is an obvious distinction between the statute under consideration and statutes which render the stockholders primarily liable and upon which such cases as *Trippe v. Huncheon*, 82 Ind. 307, and *Miller v. White*, 50 N. Y. 137, are based. The liability of defendant did not

accrue until the execution was returned no property found, or the corporation was insolvent or dissolved. His liability, then, was for the debts of the corporation then existing, and that debt was then and is now the judgment debt plaintiff is seeking to collect.

III. Again, it is objected that this suit is not prosecuted in the name of the real party in interest as required by sections 1990 and 1991, Revised Statutes 1889. These sections require the suit to be brought in the name of the real party in interest, with certain exceptions, among which is the one permitting the trustee of an express trust to maintain a suit without joining the person for whose benefit the action is maintained.

Pomeroy, Remedies and Remedial Rights, section 132, states the rule that has constantly obtained in this state as follows: "It is now settled by a great preponderance of authority, although there is some conflict, that if the assignment, whether written or verbal, of anything in action is absolute in its terms, so that by virtue thereof the entire apparent legal title vests in the assignee, any contemporaneous, collateral agreement by virtue of which he is to receive a part only of the proceeds '* * * or even is to thus account for the whole proceeds, or by virtue of which the absolute transfer is made conditional upon the fact of recovery * * *' does not render him any the less the real party in interest: he is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds. *The debtor is completely protected by the assignment.*" See, also, *Webb v. Morgan,* 14 Mo. 429; *Beattie v. Lett,* 28 Mo. 596; *Haysler v. Dawson,* 28 Mo. App. 531.

The two notes of Harper and the bank had been assigned in writing to Guerney. He obtained judgment in his own name. Under the decisions of this

court he was both the real party in interest and the trustee of an express trust. Being so, did the equitable assignment of Harper's note to Sheidley revoke that trust or did he not remain still the trustee for the beneficial owner of the note? We think most clearly he still remained a trustee for the benefit of Sheidley, the purchaser of the Harper note.

IV. It is also claimed that Sheidley had fully paid off the bank debt and that the trust ceased as to that note also by reason of the payment. This brings us to an examination of the claim that the judgment upon which this suit is based was paid off and discharged. If this be true the circuit court erred.

Recurring again to the evidence it appears that Guerney obtained a judgment against the corporation alone. Sheidley was not a party to that suit. The judgment was based on two notes assigned to Guerney for collection, one by the bank, the other by Harper. Sheidley was surety on the Harper note, and *guarantor* on the bank's note. The bank wanted its money. Sheidley refused to pay it but agreed to make a deposit of the amount, not as a payment, but as security, which he did and took a certificate of deposit "not subject to check." He deposited this money with the positive agreement with the bank that it was security and not payment, and with the further agreement that the bank should prosecute suits against the stockholders, and if possible recover the money from them. The judgment was not paid by the judgment debtor. The deposit was made by Sheidley and received by the bank with the purpose on the part of both that it should not operate as a satisfaction of the judgment. Did it amount in law to a payment notwithstanding the mutual agreement of the depositor and the bank?

The certificate of deposit was in the usual form of a time certificate. The bank was accommodated by

receiving the amount of the deposit, but surely it had no right to appropriate that money as a payment despite its agreement to take it as a deposit. Such a construction would plainly subvert the intention of the parties. As a guarantor Sheidley could not have been sued jointly with the Radiator Company. He was only contingently liable and there was no rule of law or good faith which denied him the right of insisting that the bank should resort to the assets of the corporation before calling on him to make good his guaranty, and the furnishing the bank the cash as a deposit constituted sufficient consideration for its promise to proceed first against the stockholders of the radiator company. The judgment was still the property of the bank. Its hands were not tied. It could still enforce it.

Payment extinguishes the debt; but here the parties to this deposit expressly stipulate it shall not operate as a payment. We are not adjusting the equities between these parties. The sole question here is whether this transaction constituted a payment in law. To make it so the whole character of the transaction must be changed. *Swope v. Leffingwell*, 72 Mo. 348; *M'Intyre v. Miller*, 13 M. & W. 724; *Coykendall v. Constable*, 99 N. Y. 309. See specially *Bank v. Assignee of Wilson & Co.* [1893], A. C. 181.

These views and the above cases in no way collide with the rule of law that where the duty to pay rests equally upon two or more persons and judgment is rendered against all of them, one of the judgment debtors can not pay the debt, have it assigned to him, and enforce it against the others, as held in this state. *McDaniel v. Lee*, 37 Mo. 204; *Burton v. Rutherford*, 49 Mo. 255; *Hull v. Sherwood*, 59 Mo. 172.

The distinction is that in this case the payment of this judgment against the corporation rested first on the corporation. Until it failed to pay neither Sheid-

ley nor the stockholders were under obligation to pay it, but failing the corporation, the stockholders who were still liable on their stock came next, and lastly, when the corporation and stockholders could not be made to pay it, the guarantor Sheidley.

The position of counsel that if Guerney is permitted to recover in this case, it is virtually allowing Sheidley to avoid bringing an action for contribution, a proceeding to which they claim he is restricted by the statue of Kansas, is not tenable. The statute of Kansas allows any stockholder who pays more than his proportion of any debt of a corporation to compel contribution from the other stockholders; that is to say, if he pays an amount for which as stockholder he is liable and that amount exceeds his proportion of the debts of the corporation, an amount of the debts equal to the ratio of his stock to the whole stock, he may sue for contribution as his only remedy. But it is too plain for argument that a stockholder may become a creditor of a corporation and for any debts he may have paid for it in excess of his liability as a stockholder, he has all the remedies and rights of any other creditor of the corporation.

The cases which hold that the only remedy of a stockholder is for contribution are based on statutes making them absolutely liable for all debts of the corporation, but under the Kansas statute and our own, the stockholders are not sureties for each other. There is no joint and several liability nor does the statute make them copartners. Each stockholder simply becomes liable to the creditors of the company for an amount equal to the amount of his stock, or double the amount, as the statute prescribes; but there is nothing which forbids a stockholder becoming a creditor of the corporation or invoking the remedies open to other creditors. *Brinham v. Coal Co.*, 47 Pa. St. 43; *Wood-*

*ruff, etc., Iron Works v. Chittenden,* 4 Bosw. (N. Y.) 406; *Schaeffer v. Brewery Co.,* 4 Mo. App. 115; *Hall & Co. v. Klinck,* 25 S. C. 348; *Farrow v. Bivings,* 13 Rich. Eq. 25; *Simonson v. Spencer,* 15 Wend. 548; *Slee v. Bloom,* 5 Johns. Chan. 382.

V. Finally it is urged that this action is based upon a foreign statute, penal in its nature, which this court will not enforce.

If this statute is penal in its nature, or in conflict with the public policy of this state, the courts of this state are not required by comity or otherwise to enforce the claim arising under the statute.

It is not, however, a penal statute. The ordinary statutory liability of a stockholder is a contractual liability and is readily distinguished from those liabilities imposed upon officers or stockholders for failure to comply with some provision of the law in regard to their duties as such, such as filing reports, giving notices, or entering into certain character of contracts denounced by the statute. *St. Louis, etc., Co. v. Harbine,* 2 Mo. App. 134; *Hodgson v. Cheever,* 8 Mo. App. 318; *Bagley v. Tyler,* 43 Mo. App. 195; Morawetz on Corporations, secs. 875 and 876; *Flash v. Conn,* 109 U. S. 371.

*Kritzer v. Woodson,* 19 Mo. 329, was unlike this. The statute in that case provided that the debts of the corporation should not exceed the capital stock actually paid in and if a debt in excess of this amount was created the directors should be liable individually. This was clearly a penalty imposed for dereliction of duty by the directors.

*Provident Savings Inst. v. Skating Rink,* 52 Mo. 552, was under a statute similar to this and the liability was held to be on a contract.

*Ochiltree v. Railroad,* 54 Mo. 113, is cited to sustain the point that a statute imposing upon stock-

holders a liability double the amount of their stock was a penal statute. The remark of the learned judge to that effect was not necessary in the determination of that case. It refers to *Kritzer v. Woodson*, which was based upon a clearly penal statute. The point under discussion in that case and decided was that a stockholder who became such after the repeal of the double liability clause was not liable beyond the amount of his stock. It was conceded that he had paid up his stock, and this court held, and we think most justly, that by his subscription it could not be implied that he assumed an obligation which neither the law nor his contract imposed, but so much of the opinion as held the statute previous to the repeal of the double liability clause a penal one was clearly *obiter* and is not to be followed as a precedent.

The same learned judge who wrote that opinion also wrote *Perry v. Turner*, 55 Mo. 418, and referred to *Kritzer v. Woodson*, as holding the double liability clause to be highly penal, when it is evident that clause was not under consideration in that case, and he does not cite *Ochiltree v. Railroad* as so holding.

The cases holding that the stockholder's liability for an excess over his stock is not penal but a contractual liability will be found collated in Cook on Stock and Stockholders, note 1, page 292, section 223.

It does not follow that because the people of this commonwealth have restricted the liability of stockholders in corporations created by virtue of our own laws to the amount of their stock, that they will refuse to enforce in their courts the contracts of its own citizens who voluntarily go into other states and become stockholders in corporations under their laws which impose upon stockholders a personal liability in excess of the amount of the stock taken. Such a contract is

not against public policy.   It contravenes no principle of good morals and has no mischievous tendency.   It is not in any sense repugnant to our ideas of honesty or justice.   *Post & Co. v. Railroad*, 144 Mass. 344.

We have been cited to the decision of the supreme court of Massachusetts holding that a resident of New York could not maintain in the courts of Massachusetts an action against a resident of California found and duly served in Massachusetts to establish his personal liability as a stockholder of a Kansas corporation, which had no place of business in Massachusetts, for a debt of that corporation to the resident of New York, under the laws of Kansas providing for a special and limited liability on the part of stockholders when no judicial proceeding in Kansas had ascertained and established the liability of the stockholder.   *Bank v. Rindge*, 154 Mass. 203.   Great as is our respect for that court, its reasoning in that case is to our minds entirely unsatisfactory.

We agree with counsel for the plaintiff that every objection urged to the maintenance of the action in that case would apply equally as well if an action on a promissory note made by stockholders of the corporation had been brought by a creditor of the corporation.   Is it not evident that no judicial proceeding in Kansas to ascertain and establish the liability of defendant as such stockholder could be had and that the only proceeding that could be had was an action at law by the creditor against the stockholder.

The United States circuit court for California found no difficulty in holding that the creditor might proceed by an ordinary action at law *wherever* personal jurisdiction of the stockholder could be obtained and the statute of Kansas was the measure of his liability. *Bank v. Rindge*, 57 Fed. Rep. 279.

State ex rel. v. Goetz.

We find no error committed against the appellant Moóre.

Upon the cross appeal of appellant Guerney we think that the circuit court erred in not giving him judgment for $7,500 instead of $5,000.   As against the creditors the agreement to issue to him the stock as fully paid when only fifty cents on the dollar was actually paid, was nugatory.   It results that appellant Moore still owed $2,500 on his stock and he was liable for the full amount of $5,000 in addition to the unpaid subscription.   The judgment is reversed and cause remanded with directions to the circuit court to render judgment for the plaintiff for $7,500.   SHERWOOD and BURGESS, JJ., concur.