JOHN L. KEELEY, RESPONDENT, v. THE INDEMNITY COMPANY OF AMERICA, A CORPORATION, APPELLANT.*—7 S. W. (2d) 434.

St. Louis Court of Appeals.   Opinion filed June 19, 1928.

*Corpus Juris-Cyc. References: Assignments, 5CJ, p. 852, n. 45; p. 854, n. 50; Contracts, 13CJ, p. 528, n. 50; Estoppel, 21CJ, p. 1112, n. 40; p 1238, n. 63; Fire Insurance. 26CJ, p. 563. n. 67; p. 578, n. 11; Insurance, 33CJ, p. 151, n. 12, 13; Parties, 30Cyc, p. 78, n. 66.

*Leahy, Saunders & Walther* and *Lyon Anderson* for appellant.

*Holland, Lashly & Donnell* for respondent.

DAUES, P. J.—This is a suit on a fire insurance policy issued by defendant company to plaintiff, covering three automobile trucks. There was a verdict and judgment for plaintiff in the sum of $5600 with interest, making $6716. The verdict also allowed the sum of $560 for vexatious delay in refusing to pay the policy, and $800 attorney's fee, totaling in all the sum of $8076. Plaintiff voluntarily remitted $671.40, which is the amount plaintiff tendered at the trial as credit on any judgment to be rendered for plaintiff, so that we have before us a verdict and judgment for $7404.60. Defendant appeals.

No question arises about the pleadings. The proof most favorable to plaintiff appears to be that two trucks were purchased by plaintiff in October, 1922, from the International Harvester Company. He paid $7023 for them and the insurance on these trucks was for $5600. To distinguish the trucks involved, they are referred to in the evidence as the October trucks. A third truck was bought by plaintiff

from the same company in September, 1922, and this truck will be called the September truck.

When purchasing the October trucks, plaintiff exchanged two old trucks which he had bought in August of that year, and these trucks will be called the August trucks. On the October trucks plaintiff gave the Harvester company notes as part payment, and the notes were secured by a chattel mortgage on the trucks. The same mortgage transaction was had with reference to the September trucks, and all mortgages were duly recorded in St. Clair county, Illinois, October 26, 1922. On January 23, 1923, there was still unpaid on the three trucks the sum of $7013.72. A fire occurred on January 20, 1923, in which the trucks were totally destroyed in East St. Louis, Illinois.

The insurance was solicited and obtained through Arthur Bauer, an insurance broker. That is to say, Bauer testified that he secured the insurance and that his office was in the defendant company and that he did not pay any rent, and that he used the office equipment and stenographic service without cost to him; that it was his agreement with defendant company to place all of his business with them. He, however, testified that in fact he placed only about one-fourth of his business with defendant. At any rate, Bauer secured the policy from defendant in the city of St. Louis and delivered it to plaintiff in East St. Louis. The premium was paid by notes, one being for $450, due January 30, 1923, and the other for $441.84, became due March 1, 1923. It seems that the notes included an amount other than this transaction, but this matter is taken care of and is not involved.

On February 3, 1923, defendant by a draft for $700 made payable to plaintiff and the Harvester company paid the loss in full on the September truck only. The record shows that prior to this payment, the Harvester company notified the defendant, in writing, that it held a mortgage on the September truck and the mortgages on the October trucks. This letter is dated January 23, 1923. On January 18, 1924, plaintiff made an assignment, which is really the crux of this whole controversy. This assignment is as follows, italics ours:

"For value received I hereby assign, set over and transfer unto International Harvester Company of America all my right, title and interest in and to such *proceeds as may ultimately be derived from any and all insurance policies,* upon which collection has not yet been made, which policies may be applicable to certain trucks destroyed by fire in East St. Louis, Illinois, on or about January 20, 1923, which said trucks were previously sold to me and upon which the said International Harvester Company of America holds a mortgage.

"Dated January 18, 1924.

"(Signed)   JOHN L. KEELEY."

Plaintiff insists that this is an assignment of the proceeds and not of the claim itself. The defendant maintains that it is a straight out and out assignment of the claim. We will later consider this question.

Controversy arises as to whether there was insurance on the October trucks in another company, to-wit the Fort Dearborn Casualty Underwriters. The evidence in this respect is very conflicting. There was evidence that plaintiff and Bauer came to the office of defendant the day after the fire and that plaintiff produced three policies, the one in suit and two others issued by the Fort Dearborn Casualty Company.

Witness S. G. Parks testified that he was connected with the defendant company. He stated that the Fort Dearborn policies covered the same trucks that are here in suit; that he had the policies in his possession for a few moments but did not know the numbers on them, and that he then took the policies in to Mr. Thompson of defendant company. The court at this point interrupted the witness and asked him whether he took the policies from the plaintiff, and he said he did, and that he then gave them to Mr. Thompson, and that within a few moments afterwards he gave the policies back to plaintiff.

Earl C. Thompson, general manager of defendant company, testified that at the conference between him, Parks, plaintiff and Bauer, Parks said that he had plaintiff's policies in hand, and explained to him that there was a loss, which was not insured by defendant but was insured by the Fort Dearborn company. Thompson said he then looked over and examined the Fort Dearborn policies, and talked to plaintiff about them.

Defendant's claim adjuster, Mark Ashley, testified that Bauer and plaintiff came to his desk a day or two after the fire and that Bauer explained to him that there was other insurance on the truck, issued by the Fort Dearborn company. He said he saw the policy but did not examine it, and that either Bauer or plaintiff told him that the Fort Dearborn policy was for $3500 on each truck.

Plaintiff testified that one Launtz insured the August trucks with the Fort Dearborn company. These were the trucks traded in for the October Harvester trucks, and he said that he turned these policies in to Launtz some time between the first and twelfth of October, 1922, for cancellation. He denied positively that he ever had any policies in his possession issued by the Fort Dearborn company on the October trucks, or that he ever ordered any insurance on the October trucks from the Dearborn company. He said that when he went into the conference with defendant's agents he was told that they had information that plaintiff had insurance on the October trucks in the Fort Dearborn company. He said he told them that he did not have such insurance; that the only insurance he had in the Fort Dearborn company was on a Ford coupe. He said he returned to defendant's office a few days later and brought this policy to defendant for inspection. He denied positively that he ever had any other insurance policy issued by the Fort Dearborn company in defendant's office.

Launtz, the agent for the Fort Dearborn company in East St. Louis, testified that plaintiff did turn this policy back as testified to

by plaintiff. He also said that the policies on the August trucks were never out of his possession from the day they were returned to him by plaintiff until he returned them to his own company. He stated that when he learned that plaintiff had acquired the October trucks he wrote his home office for riders to transfer the policies from the August to the October trucks; he testified positively that plaintiff did not tell him to secure any insurance on the October trucks, but that he of his own accord sought to have this transfer made.

Plaintiff's counsel living in East St. Louis testified that plaintiff never told him that he had any policies with the Fort Dearborn company on the October trucks, but that he got such information from defendant's office in St. Louis.

Bauer, who secured the insurance, testified that plaintiff said there was other insurance on the trucks; that he never saw the Fort Dearborn policies and did not know what they covered.

H. H. Webb, an agent for the Harvester company, testified for plaintiff that the policies in suit were delivered to him a month or two after October 19, 1922, and that same were never out of his possession or out of the office of the Harvester company from its delivery within a month or two after October, 1922, until they were delivered to the Harvester company's attorney's in June, 1923.

Appellant strenuously insists that no case was made for the jury for the reason that the evidence clearly shows that plaintiff was not the real party in interest. We confess this question has given us pause, but after carefully considering section 1155, Revised Statutes Missouri, 1919, and the cases cited in the briefs and such as our own investigation has led us to, we think it must be held that plaintiff is the real party in interest.

Now, in considering the assignment, we must have in mind that it is necessary only that plaintiff have the bare legal title to the cause of action. Even where the beneficial ownership of the cause of action has been assigned, the owner of the legal title to the cause of action yet remains the real party in interest, for the statute, supra, makes the person who has the legal title to the cause of action the real party in interest. Now this assignment conveys plaintiff's interest to the "proceeds as may ultimately be derived from the policies." Does he not then still retain the legal title to the cause of action? We think so. On the same day that this assignment was executed, plaintiff also gave a power of attorney to the Harvester company, or its attorneys, Spencer & Donnell, to institute and prosecute and settle this claim against the insurance company. When these two papers are considered together, we think the intention is shown.that plaintiff was retaining the legal title to the cause of action. That which was given the Harvester company by the assignment, that is, the proceeds from the insurance policies, was not a legal interest in the proceeds but an equitable interest therein, and while plaintiff need not have a benefi-

cial interest in the cause of action so as to constitute him the real party in interest, yet he did retain a beneficial interest, for it must be borne in mind that his liability to the Harvester company for the unpaid purchase price of the insured trucks caused him to have a beneficial interest in the suit on the policy.

On the proposition that the holder of the legal title to the cause of action is the real party in interest, though he may not have any beneficial interest, see 30 Cyc. 78; Guerney v. Moore, 131 Mo. 650, 32 S. W. 1132; Hartmann v. Owens, 293 Mo. 508, 240 S. W. 113; Young v. Hudson, 99 Mo. 102, 12 S. W. 632.

Under these authorities we think plaintiff had the legal title to the cause of action, and his agreement about the distribution of the proceeds does not change that. Whatever interest the Harvester company had was equitable, for from the instrument itself it will be seen that plaintiff did not assign his cause of action against defendant, but merely assigned whatever proceeds may ultimately be derived from the policies. In effect, it was an agreement with the Harvester company that if he, plaintiff, should recover any money on his suit against defendant, he would pay same over to the Harvester company to cover his debt to it. The proceeds was a matter of the future and something that might never come into being. By the assignment and power of attorney, the intention clearly appears that plaintiff was to keep his cause of action, for he authorized an attorney to bring the suit for him, and by the assignment he sought to convey to the Harvester company whatever he may get out of the lawsuit. The instruments were part of the same transaction and should be construed together. [13 Corpus Juris, 528; MacDonald v. Wolff, 40 Mo. App. 302; Parlin & Orendorff v. Boatman, 84 Mo. App. 67.]

It is not necessary to cite any authority to show that whatever interest the Harvester company had in the proceeds was an equitable right, because one may not assign a thing not in existence in law but only in equity. It might be added that there is reason to believe that the defendant cannot raise the objection that plaintiff is not the real party in interest, for it has been said by law writers and cases from other jurisdictions that if the defendant is protected from another suit on the same matter he may not raise this objection. And the Harvester company is estopped to assert that plaintiff is not the real party in interest because it procured a power of attorney from plaintiff to prosecute the suit, and no further suit could be brought under the policy by the Harvester company because the limitation had expired.

Appellant's authorities are not of sufficient influence, because they are not controlling under the facts and circumstances of this case. Therefore we rule that the court properly refused the instruction in the nature of a demurrer to the evidence.

The next complaint is against plaintiff's instruction No. 2, which it is said is confusing and misleading. The instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that on or before the delivery of said policy to Arthur Bauer for delivery to Keeley, Arthur Bauer told the defendant company that said automobile trucks were covered by a chattel mortgage, then the fact that said trucks were covered by a chattel mortgage is no defense in this case."

We do not believe that this instruction does more than to require the jury to find whether Bauer told the defendant indemnity company that the automobile trucks were covered by a chattel mortgage. It is true, this does not tell the jury what would constitute "telling the defendant." But the instruction, we think, is sufficient advice to the jury, and there was enough evidence to warrant the giving of same.

Complaint is made against plaintiff's instruction No. 3. It is said that this instruction fails to require the jury to find that the indemnity company knew that the October trucks were covered by a mortgage at the time of payment of the amount due under the policy on the September truck, but that it assumes that the insurance company was aware of this fact. We do not think that the instruction assumes such fact. And, furthermore, under this record we say that there could be no reasonable controversy or dispute about the fact that defendant knew that there were chattel mortgages on the October trucks when it paid the loss on the September truck. A letter in the record from the Harvester company to the indemnity company on January 23, 1923, ten days before the loss on the September truck was paid, gave such express information. It is not denied.

The next complaint, and one that we think is well taken, is that the court should not have submitted the question of penalty for vexatious refusal to pay and attorney's fee. The rule, as laid down in State ex rel. v. Allen, 243 S. W. 839, based upon the case of Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399, 210 S. W. 37, is that a penalty should not be inflicted unless the evidence and circumstances show that such refusal was wilful and without reasonable cause to a reasonable and prudent person before trial. From what has been said before, both on the law, and on the facts, the defense in this case and the delay in paying the policy certainly comes within the realm of good faith and was reasonably justified. Therefore so much of the judgment as was awarded for vexatious refusal to pay and attorney's fee, to-wit $1360, clearly must be stricken out.

Accordingly, if respondent will within ten days from the filing of this opinion remit the sum of $1360, the judgment will be reversed and the cause remanded with directions to enter a new judgment in the sum of $6044.60 with interest at the rate of six per cent from the date of the original judgment. Otherwise the judgment will be reversed and the cause remanded. *Becker* and *Nipper, JJ.,* concur.