**ROSECRANS et al. v. WILLIAM S. LOZIER, Inc., et al.**

No. 12798.

Circuit Court of Appeals, Eighth Circuit.

May 2, 1944.

120

Clarence C. Chilcott, of Kansas City, Mo. (Marion D. Waltner, of Kansas City, Mo., on the brief), for appellants.

William E. Kemp, of Kansas City, Mo. (Col. Frank E. Shaw, of Omaha, Neb., Bert E. Church and Roger C. Slaughter, both of Kansas City, Mo., and Howard T. Fleeson, both of Wichita, Kan., on the brief), for appellees.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal by the plaintiff E. S. Rosecrans from a judgment which dismissed his action with prejudice for want of prosecution after denial of a motion to remand the case to the state court from which it had been removed. Marion D. Waltner and Clarence C. Chilcott are joined as appellants because they were attorneys for plaintiff below and were included in an injunction order preventing plaintiff and his attorneys from further prosecuting the action in the state court, the injunction order being also included in the appeal. As the basic controversy concerns only plaintiff and defendants, the other appellants may be disregarded.

The original petition as filed in the state court alleges that plaintiff E. S. Rosecrans is a citizen and resident of New York; that defendant William A. Lozier, Inc., is a New York corporation, and that defendants William S. Broderick and David G. Gordon are citizens and residents of Colorado, and that defendants operate under the style and firm name of William S. Lozier, Inc.-Broderick & Gordon; that on or about October 1, 1942, J. D. Winder entered into an oral contract with defendants for the operating and managing of a cafeteria commissary, recreation building, bath houses and other conveniences in what is known as Trailer Town, and for furnishing in connection therewith all counters, shelving, furniture, cook stoves, refrigerators, sinks and all necessary kitchen and dining room equipment, besides certain sanitary equipment for Trailer Town, near De Soto, Kansas, for use of the workers employed at the Sunflower Ordnance Works. Winder agreed, it is alleged, to carry a full line of meats, groceries, dairy products and other merchandise and to sell the same at prices not exceeding 25% above the cost of delivery at Trailer Town; to set up facilities for handling ordinary mail of patrons, including sale of stamps, and to transport incoming mail to Trailer Town at least once a week, and to supervise the recreational activities of Trailer Town, including a nursery for the children of the occupants.

Defendants on their part agreed to furnish Winder with a combination residence and office building, with heat, light, and sanitary fixtures completely installed, all electrical energy, water for all purposes, and to maintain roads, walks, drainage systems and utility lines, police and fire protection. A schedule of payments for the use of trailers is set out in the petition, and plaintiff alleges that Winder had performed all conditions of the contract on his part to be performed except as prevented by defendants, and that he had been damaged by reason of the breach of said contract in the sum of $50,000, and that this claim for damages had been assigned to the plaintiff. In a second count plaintiff alleges that there was furnished by Winder fuel, labor and supervision for heating a school house in Trailer Town, for which defendants became obligated to pay $500.

Defendants filed in the Circuit Court of Jackson County, Missouri, where the action was brought, a petition for removal to the United States District Court for the Western District of Missouri. The grounds for removal alleged in the petition are: (1) J. D. Winder is the true party in interest and as between him and the defendants diversity of citizenship exists; (2) there was never an oral contract between Winder and defendants, the

only contract being a written one in which the United States of America is an interested party and the real party in interest, as the contract relating to the trailer camp to be located on United States property "was subject to the approval, confirmation and control of the United States of America, acting by and through its authorized representative, the Contracting Officer of the Corps of United States Engineers;" (3) the written contract provides that plaintiff's alleged assignor shall be without power to assign the contract except with the written consent of defendants and the United States acting through the contracting officer, and the purported assignment to plaintiff of an oral contract is alleged in plaintiff's petition for the fraudulent purpose of preventing removal to the United States District Court, and that Winder, who is a resident of Arkansas, is a necessary and indispensable party and had he sued there would have been complete diversity of citizenship.

Following removal to the District Court plaintiff filed a motion to remand. Evidence was taken and the District Court by order denied the petition to remand. Later, before another District Judge, upon plaintiff's refusal to proceed further in the Federal Court a judgment was entered "that this cause be and the same is hereby dismissed with prejudice."

The contentions on this appeal are that the court erred in denying plaintiff's motion to remand because the action in fact did not arise under the Constitution or laws of the United States; that the assignment of the claim for damages was valid, and hence, jurisdiction could not be predicated upon diversity of citizenship.

■■ Suits of a civil nature may be removed from the state court to a United States court if arising under the Constitution or laws of the United States. Judicial Code, Sec. 28, Title 28 U.S.C.A. § 71. This right of removal is not dependent upon diversity of citizenship between the parties. Cummings v. Chicago, 188 U.S. 410, 23 S.Ct. 472, 47 L.Ed. 525. Ordinarily the presence of a federal question which will authorize removal of the suit to a United States court must be disclosed by plaintiff's petition or complaint, unaided by defendant's answer or defenses, or indeed by plaintiff's reply to the defenses pleaded by defendant. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Great Northern R. Co. v. Galbreath

Cattle Co., 271 U.S. 99, 46 S.Ct. 439, 70 L. Ed. 854; Lambert Run Coal Co. v. Baltimore & Ohio R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671. It is therefore of controlling importance to consider the allegations of plaintiff's petition.

■ If the claim disclosed by plaintiff's pleading presents a controversy which depends for its solution upon the construction of a federal statute or the federal Constitution, or directly involves some right or immunity created or protected by the Constitution, then it was removable to the Federal court. It is not always easy to determine when a suit may be said to arise under the Constitution or laws of the United States. Some tests, however, seem to be well recognized. To bring a case within the removal statute, a right or immunity created by the Constitution or laws of the United States must be the essential element of plaintiff's cause of action. Gully v. First National Bank, supra. It is not sufficient to warrant removal that in the progress of the trial it may be necessary to give a construction to the Constitution or laws of the United States, but the case must substantially involve a dispute or controversy as to the effect or construction of the Constitution, laws or treaties of the United States, upon the determination of which the result depends. The controversy must be genuine and present as distinguished from a possible or conjectural one. With these rules in mind we turn to a consideration of the cause of action pleaded in plaintiff's petition.

■ We may note the background. Defendants before entering into any contract with Winder, had entered into a cost-plus-a-fixed-fee contract with the United States government for the design and construction of an ordnance plant known in the record as the Sunflower Ordnance Works, near De Soto, Kansas. This was authorized by Title 2 of the First War Powers Act of December 18, 1941, Title 50 U.S.C.A. Appendix, § 611, and by Executive Order No. 9001, dated December 27, 1941, 50 U.S.C.A. Appendix, § 611 note. Construction of the camp was on property owned by the United States and the construction was under direction of an army officer acting for the government. The ordnance plant is devoted to the manufacture of munitions for use in the war effort. Defendants contend that the oral contract described in the petition provided in effect that defendants, by agreeing to

furnish Winder certain services and appointments, were in fact acting as agents of the United States. The contract of defendants with the government, we think, made them independent contractors rather than government agents. Pickering Land & Timber Co. v. Wisby, D.C.La., 242 F. 993. But even if they were agents of the United States that would not ipso facto make the case removable. The right of removal is purely statutory and the statute contains no provision permitting an agent or delegate of the United States to remove an action in which it is sought to hold him personally liable for any act or transaction arising out of the agency. If the agent so sued can show that he was not acting for himself and did not bind himself personally, but bound only a principal, that would, of course, be a legal defense to the action. Ingram Day Lbr. Co. v. United States Shipbuilding Fleet Corp., D.C.Miss., 267 F. 283. Defendants here stress the agreement as pleaded which obligated them to furnish fire and police protection. They urge that they could not furnish such service as private contractors but only as representatives of some governmental authority. Even if this were true, it would not necessarily mean that they represented the United States government. Police protection is generally a function of a municipality. No authority to bind the United States government or any other government, municipality, county or state is shown by the pleading, nor in fact proved by the evidence, and it can not be inferred. Fire protection could manifestly be furnished· by defendants through their employees and by supplying hose, water, chemicals and apparatus. Police protection could well be afforded, as it often is, by private parties by hiring guards. Police protection as used in a municipal ordinance or the statute of a state would doubtless refer to a governmental function, but when used in a private contract, between private parties, it does not necessarily mean that officers of the law shall furnish the protection, and absent authority given the defendants to contract for a municipal, state or national government, it must be construed to mean something that defendants could agree to provide. They could provide privately hired guards. As between private individuals the expression "to police" might well mean to regulate, to control, or to keep in order. New Century Dictionary. We are of the view that plaintiff's petition does not disclose the presence of a federal question within the meaning of the removal statute.

Defendants, however, urge that the allegation in plaintiff's petition that he had an oral contract was baseless and that it was embodied in his petition in the state courts for the fraudulent purpose of preventing the removal of the case to the Federal court, and that such fraudulent purpose may be proved, based upon appropriate allegations in the petition for removal. Farmers' Bank & Trust Co. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 25 F.2d 23; Boyle v. Chicago, R. I. & P. Ry. Co., 8 Cir., 42 F.2d 633. The trial court, adopting this view of the law, heard evidence in support of the allegations of the petition of removal going beyond the face of plaintiff's pleading. For the purposes of this case we shall concede that plaintiff can not conceal the basic character of his cause of action by any language or device of pleading so as to defeat removal to a Federal court. In our view of the case, we need not determine whether the evidence warranted the finding that in pleading that he had an oral contract, instead of pleading that he had only a written contract, plaintiff was fraudulently attempting to conceal the fact that his claim was one arising under the constitutional laws of the United States, and that his plea of an oral contract was entirely groundless. Confessedly, there are some differences between the oral contract as pleaded and the written contract as proven at the hearing on motion to remand. In passing it may be observed that the written contract in its final form was not approved until March 20, 1943, whereas there had apparently been contractual relations between the defendants and Winder from October 17, 1942. The written contract provides that the patrons of the trailer camp should be limited to the employees and families of employees of the United States government and of the various contractors and subcontractors at the plant, all to be subject to approval, rules and regulations as to admissibility and conduct. Such rules and regulations were to be provided by Winder and approved by defendants and the authorized representative of the United States. These rules and regulations were to be posted in conspicuous places throughout the camp and should provide for the expulsion from the camp of any person or persons violating them. Winder agreed that he would keep at the site of the trailer camp such records and books of

account as should be requested by the defendants or the officer of the United States, and that they should have the right at all times to inspect and audit the records and books; that defendants or the officer might from time to time order changes in the sale prices or service charges in effect at the trailer camp; that Winder would obey and abide by all applicable laws, regulations and ordinances and other rules of the United States, the State of Kansas, or the political subdivision or any other duly constituted public authority wherein the trailer camp was operated. He agreed to terminate the employment of any employee whose continued employment in the opinion of the officer or the defendants was inimical to the interests of the government or the employees being served. He agreed to indemnify and save harmless the defendants and the government of all costs, expenses or liability resulting from claims of every description and from every source arising out of his operations. He agreed to be liable to defendants and the government for all loss or damage to any and all property furnished by the defendants or by the government, resulting from his negligence or that of his employees. The contract of defendants with the government was made a part of Winder's contract by appropriate reference. These provisions were not mentioned in plaintiff's petition as being a part of his oral contract. The other pleaded provisions of the oral contract we believe were all embodied in the written contract.

 It is the contention of defendants that the United States is immanent throughout this contract, and hence, an action based upon it comes within the purview of the removal statute as one arising under the Constitution or laws of the United States. But no federal law is involved in the making of a contract between two private parties even though the subject matter may be such that the laws of the United States became a part of the contract. That authority to enter into a contract finds its source in some federal law does not necessarily bring a cause of action based upon its breach under federal law. Gully v. First Natl. Bank, supra; People of Puerto Rico v. Russell & Co., 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903. The federal nature of the right to be established and not the source of the authority to establish it is decisive, and not every question of federal law involved in a suit is proof that a federal law is the basis of the suit, and an action based upon a right which may have its origin in the laws of the United States is not for that reason alone one arising under those laws. The controversy arising under the laws of the United States must be basic in character as distinguished from those that are collateral. They must be disputes that are necessary for the determination of the rights of the parties, rather than those that are merely possible, incidental or conjectural.

 It is true that hypothetical cases might be conjured up by one of a creative imagination which would sustain federal jurisdiction in the action between the parties here. For instance, a proper regulation promulgated by an officer of the United States Army having authority might be deemed inapplicable or its interpretation a subject of controversy between the parties. But such an issue would be purely conjectural and to render the cause removable there must be "a genuine and present controversy, not merely a possible or conjectural one." Gully v. First National Bank, supra [299 U.S. 109, 57 S.Ct. 97, 81 L.Ed. 70]. The petition alleges a mere breach of the contract, and if we substitute the written contract for the oral contract pleaded, this alleged breach may simply mean that defendants have refused to perform on their part, or it might mean that without right they have excluded Winder from the property. Even though defendants were to answer pleading as their justification for nonperformance, some order or regulation of the United States, that clearly would be a matter of defense, and the question of removal is not to be tested by the answer nor by any defensive matter stated in plaintiff's pleadings. Gully v. First Natl. Bank, supra; Peyton v. Railway Express Agency, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525. Defendants have failed to show wherein there is any basic controversy involving any federal right. So far as appears from the petition or the proof submitted on the motion to remand, the United States may be perfectly content with the arrangement; in fact, its officer has approved the contract. In setting limits to the pursuit of a federal question, "the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible." Gully v.

First Natl. Bank, supra. As it does not appear either from plaintiff's pleading, nor from the proof submitted in support of defendants' petition for removal, that there is any basic controversy between the parties based upon the Constitution or laws of the United States, the case was not removable as one arising under federal law.

■■■ Defendants further insist, however, that the case was removable as one in which there is a diversity of citizenship. In support of this contention it is urged that Winder, who is a citizen of Arkansas, must be regarded as the real plaintiff, and as the written contract provides that the rights and privileges granted thereunder were not assignable without the consent of the defendants and the officer representing the United States, and no such consent has been pleaded, the action must fail. The merits of plaintiff's claim can not, of course, be determined on motion to remand. Plaintiff is suing for damages for breach of contract, and he alleges that he is an assignee of the claim for breach. The prohibition of the contract against assignment is against an assignment of the rights and privileges under the contract. This prohibition of assignment does not, however, prohibit the assignment of a claim for damages on account of breach of the contract. Ocean Accident & Guarantee Co. v. Southwestern Bell Telephone Co., 8 Cir., 100 F.2d 441, 122 A.L.R. 133; Florance v. Kresge, 4 Cir., 93 F.2d 784; Dixon-Reo Co. v. Horton Motor Co., 49 N.D. 304, 191 N.W. 780.

■■■ Defendants further challenge the right to assign the claim for damages because of the statute making void "all transfers and assignments made of any claim upon the United States," except under certain circumstances. Title 31 U.S.C.A. § 203, R.S. § 3477, as amended, Act of Oct. 9, 1940, c. 779, Sec. 1, 54 Stat. 1029. This statute has no application to the situation here disclosed. Its purpose is to protect the government, as without some such limit the government "would be in danger of becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability." Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 534, 81 L.Ed. 822. The statute has no application to transactions between private individuals. Richmond Postal Credit Union v. Booker, 170 Va. 129, 195 S.E. 663. A claim against the United States under this section is a right to demand money or property from the United States which can be presented by the claimant to some department or officer of the United States, or may be prosecuted in the court of claims. Hobbs v. McClean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940; Providence Eng. Corp. v. Downey Shipbuilding Corp., D.C. N.Y., 3 F.2d 154; Charles Nelson Co. v. United States, D.C. Wash., 11 F.2d 906. It must be borne in mind that the controversy here in litigation is between plaintiff and defendants based upon breach of contract. No judgment could possibly be entered in such a case against the government.

■■■ It is finally urged by defendants that the assignment of the claim for damages on account of breach of this contract was colorable only and made for the purpose of circumventing federal jurisdiction by reason of diversity of citizenship, which would otherwise have existed. Statutory provisions of New York (Section 210, New York Practice Act) and Missouri (Secs. 849, 850, R.S. 1939, Mo. R.S.A.) as well as rule 17(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provide in effect that every action must be prosecuted in the name of the real party in interest, except that the trustee of an express trust may sue in his own name without joining with him the person for whose benefit the action is prosecuted. If the assignor retained an interest in the claim for damages, and this does not appear but is purely conjectural, plaintiff would at least be a trustee in the sense that he could collect, though under obligation of turning over the proceeds to Winder. Even under such circumstances his citizenship would be controlling. Curb & Gutter Dist. No. 37 v. Parrish, 8 Cir., 110 F.2d 902; Knapp v. Troy & Boston R. Co., 20 Wall. 117, 22 L. Ed. 328. In Kansas, where this action arose, every chose in action is assignable, except a claim for tort. Kansas Midland Ry. Co. v. Brehm, 54 Kan. 751, 39 P. 690. This also is the law of Missouri (Keeley v. Indemnity Co., 222 Mo.App. 439, 7 S.W. 2d 434); likewise it is the law of New York (Sec. 210, New York Civil Practice Act; Meyers v. Credit Lyonnais 259 N.Y. 399, 182 N.E. 61, 83 A.L.R. 268). The motive prompting the assignment is not material and an assignment of a cause of action to the plaintiff, a citizen of the same state as the defendant, even though it be

for the purpose of giving the state court exclusive jurisdiction, will not render the cause removable on the ground of diversity of citizenship. Carson v. Dunham, 121 U.S. 421, 7 S.Ct. 1030, 30 L.Ed. 992; Leather Mfrs. Natl. Bank v. Cooper, 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816; Oakley v. Goodnow, 118 U.S. 43, 6 S.Ct. 944, 30 L.Ed. 61; Provident Sav. Life Assur. Society v. Ford, 114 U.S. 635, 5 S.Ct. 1104, 29 L.Ed. 261; Hayday v. Hammermill Paper Co., 176 Minn. 315, 223 N.W. 614, 63 A.L.R. 210; Columbian Natl. Life Ins. Co. v. Cross, 298 Mass. 47, 9 N.E.2d 402.

It follows that the case was not removable and plaintiff's motion to remand should therefore have been sustained. In view of our conclusion on the main issues, we pretermit any discussion of the contention of the appellants relative to the injunctional order enjoining proceedings in the state court. The judgment and orders appealed from are therefore reversed and the cause remanded with directions to grant plaintiff's motion to remand the cause to the state court.