**PACIFIC FAR EAST LINE, INC., a corporation, Plaintiff,**

v.

**OGDEN CORPORATION, a corporation, et al., Defendants.**

No. C–76–2063–CBR.

United States District Court,
N. D. California.

Jan. 17, 1977.

---

**2.** See also the cases discussed and cited in *Bishop* at 975–76.

James D. Boughey, Peter A. Lindh, Gerald A. Buckosky, Dorr, Cooper & Hays, San Francisco, Cal., for plaintiff.

Mark O. Kasanin, Craig McAtee, William H. Armstrong, Thor Wilcox, McCutchen, Doyle, Brown & Enerson, San Francisco, Cal., Edward J. Koehl, Jr., Robert B. Acomb, Jr., Edith Brown Clement, Jones, Walker, Walchter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants Ogden and Avondale.

Max Gillam, Joseph A. Wheelock, Jr., Philip F. Belleville, Latham & Watkins, Los Angeles, Cal., for defendants Talvar, Alliance and American Hydromath.

Richard M. Bryan, Lauren R. Poplack, Farella, Braun & Martel, San Francisco, Cal., for defendant Alliance.

Stephen J. Vergamini, George, Greek, King, McMahon & McConnaughey, Columbus, Ohio, Richard H. McConnell, San Francisco, Cal., for defendant Telmar.

Bartlett A. Jackson, John S. Siamas, Petty, Andrews, Tufts & Jackson, San Francisco, Cal., for defendant Babcock & Wilcox.

William C. Degarmo, Alameda, Cal., Harold C. Nachtrieb, Nachtrieb, Williams & Streitz, San Francisco, Cal., for defendant Paceco.

## ORDER OF REMAND

RENFREW, District Judge.

Plaintiff Pacific Far East Line, Inc. ("PFEL"), filed this action in the Superior Court in and for the City and County of San Francisco on August 25, 1976, seeking damages according to proof from multiple defendants for breach of contract, including breach of express and implied warranties, and negligence. In its ninety cause of action complaint, PFEL also seeks punitive damages from Avondale Shipyards, Inc. ("Avondale"), and Ogden Corporation ("Ogden") for willful and malicious breach.

Avondale, the central defendant herein, entered into a written contract with PFEL on November 14, 1967, designated MA/MSB-66 by the Maritime Administration. Under the terms of the contract, Avondale was to construct six "LASH"[1]

---

1. "LASH" or "lighter aboard ship" vessels carry pre-loaded barges which are winched directly aboard the mother ship by powerful cranes. The design of such vessels differs sig-

vessels for a total contract price of $127,-956,000.00. PFEL alleges in its complaint that the ships constructed by Avondale failed to meet contract specifications in numerous fundamental respects.

In addition to Avondale, defendants include Ogden, Avondale's alleged surety, and ten subcontractors responsible for furnishing various appurtenances and component parts for the LASH vessels. PFEL alleges that these component parts have proven deficient during normal operations, subsequent to delivery of the vessels.

Avondale and Ogden removed the entire action to federal court on September 24, 1976, alleging federal jurisdiction based upon 28 U.S.C. § 1331 (federal question) and § 1442 (suits against federal officers).[2] Alliance Machine Company ("Alliance") Telmar, Inc. ("Telmar"), American Hydromath Co. ("Hydromath"), and Babcock & Wilcox Co. ("B & W") subsequently filed additional removal petitions, alleging federal jurisdiction based upon 28 U.S.C. § 1332 (diversity).[3]

On October 12, 1976, PFEL moved to remand the entire action[4] to state court, arguing that removal was improvidently granted. In support of its motion to remand, PFEL advances the following arguments: (1) The complaint is based upon maritime theories and as such is shielded from removal by the so-called "saving to suitors" clause contained in 28 U.S.C. § 1333; (2) The action is not one which "arises under" federal law within the meaning of 28 U.S.C. § 1331; and (3) The claims against Alliance, Telmar, Hydromath, and B & W are not "separate and independent" within the meaning of 28 U.S.C. § 1441(c) and, because other defendants are non-diverse with respect to PFEL, federal jurisdiction cannot be based upon 28 U.S.C. § 1332.

## THE "SAVING TO SUITORS" CLAUSE

PFEL characterizes its claim as maritime in nature and concludes that the "saving to suitors" clause of 28 U.S.C. § 1333(1) therefore bars removal.[5] Section 1333 provides in relevant part that:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

---

nificantly from that of vessels designed to carry conventionally containerized cargo.

2. 28 U.S.C. § 1442 provides that "[a] civil action or criminal prosecution commenced in a State court *against* any of the following persons may be removed *by them* to the district court of the United States for the district and division embracing the place wherein it is pending" (emphasis supplied). The persons enumerated include officers of the United States, officers of federal agencies, and persons acting under color of federal office. The instant action was not brought "against" any of the persons enumerated in § 1442 and even if it had been, defendants herein lack standing to remove under this section. "When an action of the sort specified in § 1442 is brought against a federal officer and others, even the most literal reading would permit the federal officer alone to remove, as was held in *Jones v. Elliott*, D.C.E.D.Va.1950, 94 F.Supp. 567. For 'by them' means 'by any of the following persons' and the defendants who are not federal officers are not such persons." *Bradford v. Harding*,

284 F.2d 307, 310 (2 Cir. 1960). Although 28 U.S.C. § 1442 was one of the grounds set forth in Avondale and Ogden's removal petition, the argument that § 1442 has application here was never subsequently briefed and appears, quite wisely, to have been abandoned.

3. A fifth subcontractor defendant, Reliance Electric Company ("Reliance") petitioned for removal under § 1332 but withdrew its petition without opposition after PFEL amended its complaint to allege that Reliance was not diverse, as had initially been claimed.

4. At argument Avondale moved to transfer venue to the Eastern District of Louisiana but in view of the result reached here, the Court need not address that motion.

5. Avondale and Ogden dispute PFEL's contention that its claims sound in admiralty. In light of the Court's conclusion that the "saving to suitors" clause does not operate as a bar to removal, it is unnecessary to resolve this issue.

In essence, the statute enables maritime litigants to pursue available common law remedies, if they prefer them to those supplied in admiralty. *Wunderlich v. Netherlands Insurance Co.*, 125 F.Supp. 877, 880 (S.D.N.Y.1954).

■ In construing 28 U.S.C. § 1333(1) as a bar to removal, PFEL misapprehends the meaning and purpose of the section. The "saving to suitors" clause "has long been construed to afford litigants a choice of remedies, not of forums." *Crispin Company v. Lykes Bros. Steamship Co.*, 134 F.Supp. 704, 707 (S.D.Tex.1955). As stated in *The Moses Taylor*, 4 Wall. 411, 431, 18 L.Ed. 397 (1867), "It is not a remedy in the common-law courts which is saved, but a common-law remedy." Because common-law remedies may be pursued equally well in federal as in state courts, removal does not work to frustrate the essential purpose underlying § 1333.

*Romero v. International Term. Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), relied on by plaintiff, merely prohibits removal of a maritime action from state court to the *admiralty* side of federal court. *Romero* does not bar removal where an independent basis for federal jurisdiction such as diversity exists. *See* Wright, *Law of Federal Courts* § 38, p. 133 (2d ed. 1970); 1A *Moore on Federal Practice*, § 0.167(3–3).

■ In *Crawford v. East Asiatic Company*, 156 F.Supp. 571, 572 (N.D.Cal.1957), the court noted that:

"The 'savings to suitors' language says nothing about a right to sue in a state court, nor does it contain any reference to removal of a state action. It cannot, therefore, be treated as an *express* provision by Congress against removal."

In sum, § 1333 bestows upon maritime suitors the right to pursue non-admiralty remedies, but does not foreclose the right of defendants to litigate in federal court if some basis for federal jurisdiction, other than admiralty, exists.

## FEDERAL QUESTION JURISDICTION

PFEL characterizes the instant action as one based upon "standard state law breach of contract and tort notions not considered within federal jurisdiction * * *." Motion to Remand at p. 5. According to plaintiff, "The issue is simply whether equipment furnished was deficient and whether the contractors lived up to their warranty obligations. There is no direct federal interest in the outcome of the claims as suggested by the fact that [the government] has not intervened * * *." Reply Memorandum in Support of Motion to Remand at p. 2.

By contrast, defendants Avondale and Ogden assert that the United States is vitally interested in the instant dispute which, they allege, involves a contract dependent on federal law for its interpretation. Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Remand at p. 2.

In support of their contention that the instant action arises under federal law within the meaning of 28 U.S.C. § 1331, Avondale and Ogden advance the following arguments: (1) PFEL's claims "arise under" the Merchant Marine Act of 1936, which authorizes and governs the contract here at issue; (2) The interpretation of PFEL's contract with Avondale is, or should be, a matter of federal common law; (3) Federal law must be applied here to determine the respective roles of the courts and the Maritime Administration in resolving shipbuilding contract disputes; (4) The government's ongoing interest in the design of LASH vessels mandates application of federal law in an action drawing into question the soundness of government-approved plans and specifications for such vessels; and (5) The United States pecuniary interest in the outcome of the dispute justifies the application of federal, rather than state, law in interpreting the shipbuilding contract.

■ In considering the propriety of removal under 28 U.S.C. § 1441, a court may consider only "the well pleaded facts of the complaint standing alone and unaided by anticipated defenses, the answer, or the petition for removal." *Eickhof Construction*

*Co. v. Great Northern Railway Co.*, 291 F.Supp. 44, 47 (D.Minn.1968). *See also Nello L. Teer Company v. J. A. Jones Construction Co.*, 160 F.Supp. 345, 347–348 (M.D.N.C.1958).

▣▣ Where, as here, removal is predicated upon federal question jurisdiction, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. [Citations omitted.] The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. [Citations omitted.]" *Gully v. First Nat. Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Federal question jurisdiction does not lie simply because a defense based on federal law is anticipated. Similarly, a general governmental interest in the subject matter of a dispute will not itself suffice to transform an action based on state-created rights into a federal case. With these precepts in mind, the arguments advanced by Avondale and Ogden will be examined *seriatim.*

Defendants first contend that "plaintiff's claims arise under the Merchant Marine Act of 1936 [46 U.S.C. §§ 1101 *et seq.*] which authorizes and governs the shipbuilding contract here at issue." Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Remand at p. 2. Plaintiff does not purport to assert rights based on the Merchant Marine Act, and its complaint contains no mention of that statute. Defendants must therefore rely on the argument that the Merchant Marine Act is nonetheless implicated, and that from an affirmative rather than a defensive standpoint.

▣ Defendants fail utterly to substantiate their conclusion that the instant action is in fact a "dispute which will necessarily involve interpretation of statutes of the United States, *i. e.*, the Merchant Marine Act." Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Remand at p. 7. Authority to enter into the shipbuilding contract here in issue may well derive from the Merchant Marine Act of 1936. However, that fact does not transform every dispute concerning the contract into one "arising under" federal law.

In an analogous case, *Gully v. First Nat. Bank, supra*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, the Supreme Court had occasion to consider a suit brought to recover a state tax. The action was successfully removed to federal court on the theory that because the state's power to tax derived ultimately from a federal statute, a claim that state taxes were owing actually arose under federal law. In concluding that removal had been improper, Justice Cardozo wrote:

"That there *is* a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid.

" * * * Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far." 299 U.S. at 115–116, 57 S.Ct. at 99.

Similarly, in *Rosecrans v. William S. Lozier, Inc.*, 142 F.2d 118 (8 Cir. 1944), the court concluded that

" * * * [N]o federal law is involved in the making of a contract between two private parties even though the subject matter may be such that the laws of the United States became a part of the contract. That authority to enter into a contract finds its source in some federal law does not necessarily bring a cause of action based upon its breach under federal law. [Citations omitted.] The federal nature of the right to be established and not the source of the authority to establish it is decisive, and not every question of federal law involved in a suit is proof that a federal law is the basis of the suit * * *." 142 F.2d at 123.

▣ Here, as in *Gully* and *Rosecrans*, it is unnecessary to travel back to the federal enabling statute in order to find the source of the rights underlying plaintiff's claims.

Defendants' bald assertion that the Merchant Marine Act "governs" the shipbuilding contract notwithstanding, it appears that the text of the contract itself will govern resolution of this dispute, aided where necessary by the Uniform Commercial Code and common law tort principals. As the Supreme Court concluded in *Gully, supra,* "The most one can say is that a question of federal law is lurking in the background * * *." 299 U.S. at 117, 57 S.Ct. at 99.

Defendants assert that the interpretation of the shipbuilding contract here at issue should be a matter of federal common law. There is little basis for such an assertion. In *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), Justice Fortas wrote:

"This Court's decisions applying 'federal law' to supersede state law typically relate to programs and actions which by their nature are and must be uniform in character throughout the Nation." 382 U.S. at 354, 86 S.Ct. at 507.

Avondale and Ogden cite no case in which "federal common law" was applied to the interpretation of a shipbuilding contract entered into by private parties but nonetheless argue that state law ought not to apply here, because "plaintiff's claims arise from a contract which is part of a comprehensive federal program demanding national uniformity in the interpretation of such contracts." Memorandum in Opposition at p. 8.

■ While it is true that the federal government is vitally interested in the nation's shipbuilding program, which is subsidized by the United States and overseen by the Maritime Administration, that interest is limited in character and not necessarily implicated in every dispute to which a shipbuilding contract gives rise.

■ In the instant case PFEL claims that the LASH vessels constructed by Avondale were deficient in a number of significant respects. Whether the particular vessels delivered met the contract specifications presents a unique factual controversy the resolution of which will not necessarily affect other parties and other contracts. The meaning of the contract's General Provisions, which are standard provisions promulgated by the Maritime Administration for use throughout the shipbuilding industry, are not at issue here. Similarly, the overall design of the LASH vessels, which the Maritime Administration approved, is not in controversy. Where, as here, it is simply alleged that vessels constructed pursuant to a shipbuilding contract do not meet contract specifications in particular respects, there is no pressing need for nationally uniform adjudication.

■ Avondale and Ogden contend that the proper allocation of decision-making authority between the courts and the Maritime Administration is drawn into question here, and suggest that federal law is required to sort out the respective roles of the two authorities. There is little merit to such an argument. Some of PFEL's claims may, as defendants suggest, be barred due to failure to exhaust administrative remedies. Similarly, the *res judicata* effects of certain Maritime Administration rulings may preclude PFEL from raising claims already adjudicated through the administrative process. These are issues which may be raised defensively in a state court proceeding. They are not matters of "federal common law," and, as defenses, they do not convert the action into one "arising under" federal law.

Avondale and Ogden contend that an "ongoing federal interest in the design of the LASH vessels" mandates application of federal law in determining whether or not the vessels constructed were deficient. As noted above, PFEL has not by its complaint challenged the government-approved plans or specifications contained in the contract. Rather, PFEL alleges the ships delivered did not meet the specifications in particular respects. To cite one typical example, PFEL alleges in its sixty-first cause of action that the contract specifications called for use of corrosion and weather resistant wafer check valves to relieve pressure build-up in the vessels' tanks. Plaintiff does not quarrel with this contract provi-

sion, but rather contends that the wafer check valves supplied by a subcontractor were not, in fact, corrosion resistant. The Government's interest in the overall design of LASH vessels is not implicated in such a dispute.

■ Finally, Avondale and Ogden assert that a "strong federal pecuniary interest in the claims plaintiff here asserts" justifies the application of federal law to resolve the dispute. Memorandum in Opposition at pp. 13–18. Regardless of whether the United States actually stands to gain or lose substantial sums as a result of this litigation, Avondale and Ogden have cited no authority for the proposition that federal question jurisdiction can be predicated on the government's monetary interest in the outcome of a controversy. The United States is not a party to this litigation, nor has it sought to intervene or in any other manner evinced an interest in the outcome of the case. The instances in which adjudications between private parties produce ramifications for the federal government are myriad, yet federal jurisdiction does not lie in every such instance. In sum, a case does not "arise under" federal law simply because the government stands ultimately to gain or lose by the result.

## EXISTENCE OF "SEPARATE AND INDEPENDENT" CLAIMS

This case could not have been initiated in federal court as a diversity action because complete diversity is lacking. Plaintiff PFEL is incorporated in the State of Delaware, as are defendants Ogden, Reliance, and Cutler-Hammer, Inc.

Despite the lack of complete diversity, four of the defendants herein removed to federal court on the basis of 28 U.S.C. § 1332 and now oppose remand on grounds of diversity.[6] These four defendants, all of them subcontractors who supplied appurtenances and component parts for the vessels constructed by Avondale, seek to bring themselves within 28 U.S.C. § 1441(c) which provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

The four subcontractor defendants contend that the claims against them are "separate and independent" within the meaning of § 1441(c) and would be removable on the basis of diversity if sued on alone.

The leading case construing § 1441(c) is *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In that case the Supreme Court traced the legislative history of § 1441(c), noting that its predecessor provision was framed in terms of "separable" controversies, rather than "separate and independent claims." Behind the change in language which marked the 1948 revision of the removal statute, the Court in *Finn* divined a Congressional intent to lighten the federal caseload by significantly limiting the right to removal. Characterizing "separate and independent claim" as a narrower category than "separable controversy," the Court concluded that "The Congress, in the revision, carried out its purpose to abridge the right of removal." 341 U.S. at 10, 71 S.Ct. at 538.

■ In keeping with the perceived legislative purpose underlying the revision of the removal statute, the Court in *Finn* insisted that the phrase "separate and independent claim" be construed quite strictly.

"Considering the previous history of 'separable controversy,' the broad meaning of 'cause of action,' and the congressional purpose in the revision resulting in 28 U.S.C. § 1441(c), we conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an

---

6. The four subcontractor defendants opposing remand are Alliance, Telmar, Hydromath, and B & W.

interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." 341 U.S. at 13–14, 71 S.Ct. at 540.

In the instant case, PFEL has alleged a single wrong within the meaning of *Finn*. Plaintiff contracted for the construction of six vessels and now asserts that the vessels delivered were deficient in a number of respects. The alleged inadequacy of the vessels represents but a single injury to plaintiff, regardless of the number of parties who supplied component parts for the vessels under subcontracts let by Avondale.

Plaintiff, who is not in privity with the various subcontractors, seeks to proceed against them as a third party beneficiary of the subcontracts. Reliance on that legal theory underlines the integrated nature of the entire transaction, in which PFEL is linked to the subcontractors only through the medium of the prime contractor, Avondale.[7] To characterize the claims against the subcontractors as "separate and independent" within the meaning of § 1441(c) would be to fragment an essentially unitary transaction and ignore the fundamental business reality underlying it. The claim that a particular component part failed to function properly is part and parcel of the general allegation that the vessels, considered *in toto*, failed to meet contract specifications. In short, the various dealings between PFEL, Avondale, and the subcontractors together constitute an "interlocked series of transactions" within the meaning of *American Fire & Casualty Co. v. Finn, supra*, 341 U.S. at 14, 71 S.Ct. 534.

The diverse subcontractors who characterize the claims against them as "separate and independent" rely heavily on *Climax Chemical Company v. C. F. Braun & Co.*, 370 F.2d 616 (10 Cir. 1966), *cert. denied*, 386 U.S. 981, 87 S.Ct. 1287, 18 L.Ed.2d 231 (1967). In that case Braun, who agreed to design and construct a salt cake and muriatic acid plant for Climax, subcontracted with others for the supply of component machinery. The court concluded that the claims against the subcontractors were "separate and independent" from those asserted against Braun, the prime contractor.

While the court in *Climax* purported to follow the teachings of *Finn*, the majority in fact ignored fundamental principals set forth by the Supreme Court in that decision. In *Finn*, the Supreme Court emphasized that § 1441(c)'s "separate and independent" language was to be construed quite strictly to bar removal of claims which, while "separable," lacked the total dissociation intended by Congress as a prerequisite to removal under the section. As one commentator wrote in the wake of *Finn* and its progeny:

> "Unless violence is to be done to the unambiguous language, to the canons of construction, and to the judicial interpretation which has already been accorded to these and similar words, it must be concluded that 'separate and independent' as used in Section 1441(c) means not only 'unrelated' but emphatically so. One might correctly speak of a 'separate' related claim, but use of the word 'independent' underlines the complete degree of dissociation which Congress intended." Lewin, "The Federal Courts' Hospitable Back Door—Removal of 'Separate and Independent' Non-Federal Causes of Action," 66 Harv.L.Rev. 423, 432.

Inasmuch as the decision in *Climax* was based on a fundamental misconception concerning the meaning and purpose of § 1441(c), it is not controlling here.

■ Given the dramatic increase in the federal caseload which has occurred during recent years, strict construction of the removal statute is absolutely essential.[8] Con-

---

7. In *Douglass v. Park City Associates*, 331 F.Supp. 823, 826 (E.D.Pa.1971), the court held that the claims of a third party beneficiary against the contracting parties could not be "separate and independent" within the meaning of § 1441(c).

8. According to figures contained in the 1976 Annual Report of the Director of the Administrative Office of the United States Courts, "The civil caseload in the United States District Courts continued its upward trend in fiscal year 1976 as 130,597 cases were filed—11.3% more than in the previous year and 120%

tract actions in which numerous subcontractors are joined as defendants along with the prime contractor present a common fact situation. Were a single diverse subcontractor to enjoy an absolute right of removal, as *Climax* apparently holds, the federal dockets would be glutted by such actions. In enacting § 1441(c), Congress could have intended no such result.

For all of the foregoing reasons, IT IS HEREBY ORDERED that this case is remanded to the Superior Court in and for the City and County of San Francisco.

greater than the number filed in 1960. This year marks the sixteenth consecutive year that the courts have experienced a rise in civil cases filed. * * * [T]he pending caseload at the end of the fiscal year was 17.1% higher than the pending caseload of only one year ago." 1976 Annual Report of the Director at p. 75.